

SECURITY SERVICE
FEDERAL CREDIT UNION

# EXHIBIT "A'

## NON-RECOURSE AGREEMENT

## MOTOR VEHICLE RETAIL FINANCING AGREEMENT

This is an Agreement between

AGREEMENT made this __4__ day of __December__, __2001__,
by and between: __TRIAD Motors LTD, DBA Hoven Motorcars__

(hereinafter referred to as "Dealer")
with principal offices at:

__9919 San Pedro, San Antonio TX 78216__

and Security Service Federal Credit Union for itself and its affiliates, subsidiaries and successors and assigned (hereinafter collectively referred to as "Lender") located at:

16211 La Cantera Parkway
San Antonio, Texas 78256-2419

WHEREAS, Dealer sells conditional sales contracts, chattel mortgages, security agreements or other title retention or lien instruments (hereinafter individually or collectively referred to as "Contract or Contracts") evidencing the time sale of motor vehicles of any type or description (hereinafter referred to as "Collateral") and,

WHEREAS, Lender engages in the business of purchasing Contracts and is willing to purchase Contracts from Dealer that are acceptable to Lender in Lender's sole and absolute discretion.

NOW THEREFORE, in consideration of these premises and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, Lender and Dealer hereby agree as follows:

## II. PRICE AND MANNER OF PAYMENT

The purchase price of each Contract acceptable to Lender shall be as agreed upon by Lender and Dealer. At the time of purchase:

A.  Lender shall pay to Dealer an amount to be agreed upon.

B.  Dealer may also be allowed to participate in that portion of the finance charge stated in the Contract in excess of Lender's net retention rate as may be adjusted from time-to-time in Lender's sole discretion. The amount of this participation will be credited to an account known as the Reserve Account and the credits thereto shall be referred to as "Reserves." The amount and payment of Reserves shall be in accordance with the terms and conditions of this Agreement and either Schedule A, Schedule B or Schedule C of even date herewith, which is attached hereto and incorporated herein by reference.

C.  Notwithstanding the above, if any Contract that is assigned or endorsed to Lender by Dealer does not bear a rate of finance charge previously agreed upon, Dealer agrees to tender an amount to Lender in cash or Lender may deduct from the purchase price of the Contract an amount necessary to bring the rate of finance charge to a level acceptable to Lender.

## III. RESERVES

Provided Dealer is not in default, as that term is defined herein, and provided further that there is then no existing breach of any representation, warranty or agreement on Dealer's part, credits to the Reserve Account may be paid to Dealer as specified in the attached Schedule A, Schedule B or Schedule C. Under no circumstance will any amounts credited to the Reserve Account be deemed due and owing to Dealer until actually paid by Lender. If, for any reason, Lender discontinues purchasing Contracts from Dealer, Lender may hold and apply all Reserves to any indebtedness due or which may become due from Dealer to Lender until all Contracts purchased by Lender from Dealer have liquidated.

The Reserve Account shall be security for and not in lieu of performance by Dealer of all obligations under this Agreement and any other agreements Dealer may have with Lender. Dealer shall not mortgage, pledge, hypothecate or assign all or any part of the Reserve Account. The Reserve Account need not be segregated nor kept in a separate fund and no interest shall be payable on any portion thereof at any time.

If any part of the finance charge stated in a Contract is refunded, whether by prepayment, default and acceleration or otherwise, or if any warranty made by Dealer is breached, or if Dealer is required to honor its recourse or repurchase obligations pursuant to Section VII of this Agreement, Lender will be entitled to recover from Dealer the unearned portion of the Reserve related to that Contract whether previously paid to Dealer or held by Lender.

The unearned portion of the Reserve will be in the same proportion as the refund bears to the total finance charge stated in the Contract. If unearned Reserve has previously been paid to Dealer, Dealer agrees to pay such unearned Reserve to Lender in cash upon demand. Unearned Reserves that have not been previously paid to Dealer shall be debited to the Reserve Account.

## IV. INSURANCE, EXTENDED SERVICE CONTRACTS AND AUTOMOBILE CLUB MEMBERSHIPS

Physical damage insurance acceptable to Lender covering the Collateral vehicle referred to in any Contract against fire, theft and collision is required and must be effective upon delivery of the Collateral to the buyer. Dealer will be responsible for any loss suffered by Lender if such loss would have been covered by the required insurance.

If any Contract purchased by Lender from Dealer includes a charge for an automobile club membership, mechanical breakdown insurance, extended service protection or any other service agreement offered by or through Dealer, Dealer agrees to repurchase the Contract from Lender upon demand, for the amount of the unpaid balance, if a dispute arises in connection with such automobile club membership, insurance or service contract and Dealer is not able to resolve the dispute with the buyer within (90) days.

Dealer further agrees that purchaser information (including, but not limited to, his or her name and address); product information (including, but not limited to, make, model and serial number); purchase price information (including, but not limited to, purchase price, outstanding balance and monthly payment amount); insurance information (including, but not limited to, coverages and insurance expiration dates); and the Contract maturity date shall become Lender's property and Dealer hereby waives all rights and interest in and to such information.

## V. SECURITY INTERESTS

It is the Dealer's responsibility to complete the forms and documents necessary to properly perfect the security interest of Lender in the Collateral or any Contract at the time of sale and forward them, together with the appropriate fees, to those public officials who are responsible for issuing the certificate of title, registrations and/or otherwise recording liens. The Dealer will be responsible and will reimburse Lender for any loss incurred as a result of failure to properly perfect the security interests of Lender in the Collateral of any Contract.

Request approval of WOR retail line for Triad Motors LTD, DBA Hovey Motorcars. The dealer has elected to participate in our 1% reserve program.

## DEALER INFORMATION

Triad Motors LTD, Hovey Motorcars is a new and pre-owned luxury car facility. Hove Motorcars, founded in September 1998, is the authorized new dealer for Panzo and Ovalde automobiles.

Richard Hovey Sr., along with his two sons Rick and Todd Hovey, have been in the automotive business for a combined total of 37 years. Richard Hovey Sr. has had a previous relationship with Security Service Federal Credit Union's Indirect Lending Department. He was the General Manager of Red McCombs Galleria, a pre-owned luxury automotive dealership. In 1997 the Hovey family arranged a buy out of the dealership and arranged financial backing from John N. Phillips M.D., to form what is now known as "Hovey Motorcars". The Limited partnership owners include John N. Philips, M.D., with 44% ownership, Richard D Hovey Sr., with 20.25% ownership, Richard D Hovey Jr., with 14.44 % ownership, Todd Hovey, with 10.32% ownership and finally Quintet Motors, LLC, with 1% ownership.

The dealership is located at 9919 San Pedro, San Antonio Texas and offers SSFCU members the opportunity to purchase quality new and pre-owned luxury automobiles. The dealership will serve members in the San Antonio area, including Bexar and surrounding counties.

The dealership employs 10 individuals. The dealership expects monthly sales of approximately 40 to 50 new and pre-owned luxury and sport utility vehicles a month. It is expected that SSFCU will book between 10-15 retail contracts for $250,000 to $375,000 a month from Hovey Motor Cars.

## CREDIT INFORMATION

The dealership lists its Floor Plan with Broadway National Bank.



# NON-RECOURSE AGREEMENT

# MOTOR VEHICLE RETAIL FINANCING AGREEMENT

This is an Agreement between

AGREEMENT made this **4** day of _December_, _2001_,
by and between: _TRIAD Motors LTD, DBA Hoven Motorcars_

(hereinafter referred to as "Dealer")
with principal offices at:

_9919 San Pedro, San Antonio TX 78216_

and Security Service Federal Credit Union for itself and its affiliates, subsidiaries and
successors and assigned (hereinafter collectively referred to as "Lender") located at:

16211 La Cantera Parkway
San Antonio, Texas 78256-2419

WHEREAS, Dealer sells conditional sales contracts, chattel mortgages, security agreements
or other title retention or lien instruments (hereinafter individually or collectively referred
to as "Contract or Contracts") evidencing the time sale of motor vehicles of any type or
description (hereinafter referred to as "Collateral") and,

WHEREAS, Lender engages in the business of purchasing Contracts and is willing to
purchase Contracts from Dealer that are acceptable to Lender in Lender's sole and
absolute discretion.

NOW THEREFORE, in consideration of these premises and other good and valuable
consideration, the receipt and adequacy of which is hereby acknowledged, Lender and
Dealer hereby agree as follows:

## II. PRICE AND MANNER OF PAYMENT

The purchase price of each Contract acceptable to Lender shall be as agreed upon by Lender and Dealer. At the time of purchase:

A.    Lender shall pay to Dealer an amount to be agreed upon.

B.    Dealer may also be allowed to participate in that portion of the finance charge stated in the Contract in excess of Lender's net retention rate as may be adjusted from time-to-time in Lender's sole discretion. The amount of this participation will be credited to an account known as the Reserve Account and the credits thereto shall be referred to as "Reserves." The amount and payment of Reserves shall be in accordance with the terms and conditions of this Agreement and either Schedule A, Schedule B or Schedule C of even date herewith, which is attached hereto and incorporated herein by reference.

C.    Notwithstanding the above, if any Contract that is assigned or endorsed to Lender by Dealer does not bear a rate of finance charge previously agreed upon, Dealer agrees to tender an amount to Lender in cash or Lender may deduct from the purchase price of the Contract an amount necessary to bring the rate of finance charge to a level acceptable to Lender.

## III. RESERVES

Provided Dealer is not in default, as that term is defined herein, and provided further that there is then no existing breach of any representation, warranty or agreement on Dealer's part, credits to the Reserve Account may be paid to Dealer as specified in the attached Schedule A, Schedule B or Schedule C. Under no circumstance will any amounts credited to the Reserve Account be deemed due and owing to Dealer until actually paid by Lender. If, for any reason, Lender discontinues purchasing Contracts from Dealer, Lender may hold and apply all Reserves to any indebtedness due or which may become due from Dealer to Lender until all Contracts purchased by Lender from Dealer have liquidated.

The Reserve Account shall be security for and not in lieu of performance by Dealer of all obligations under this Agreement and any other agreements Dealer may have with Lender. Dealer shall not mortgage, pledge, hypothecate or assign all or any part of the Reserve Account. The Reserve Account need not be segregated nor kept in a separate fund and no interest shall be payable on any portion thereof at any time.

If any part of the finance charge stated in a Contract is refunded, whether by prepayment, default and acceleration or otherwise, or if any warranty made by Dealer is breached, or if Dealer is required to honor its recourse or repurchase obligations pursuant to Section VII of this Agreement, Lender will be entitled to recover from Dealer the unearned portion of the Reserve related to that Contract whether previously paid to Dealer or held by Lender.

The unearned portion of the Reserve will be in the same proportion as the refund bears to the total finance charge stated in the Contract. If unearned Reserve has previously been paid to Dealer, Dealer agrees to pay such unearned Reserve to Lender in cash upon demand. Unearned Reserves that have not been previously paid to Dealer shall be debited to the Reserve Account.

## IV. INSURANCE, EXTENDED SERVICE CONTRACTS AND AUTOMOBILE CLUB MEMBERSHIPS

Physical damage insurance acceptable to Lender covering the Collateral vehicle referred to in any Contract against fire, theft and collision is required and must be effective upon delivery of the Collateral to the buyer. Dealer will be responsible for any loss suffered by Lender if such loss would have been covered by the required insurance.

If any Contract purchased by Lender from Dealer includes a charge for an automobile club membership, mechanical breakdown insurance, extended service protection or any other service agreement offered by or through Dealer, Dealer agrees to repurchase the Contract from Lender upon demand, for the amount of the unpaid balance, if a dispute arises in connection with such automobile club membership, insurance or service contract and Dealer is not able to resolve the dispute with the buyer within (90) days.

Dealer further agrees that purchaser information (including, but not limited to, his or her name and address); product information (including, but not limited to, make, model and serial number); purchase price information (including, but not limited to, purchase price, outstanding balance and monthly payment amount); insurance information (including, but not limited to, coverages and insurance expiration dates); and the Contract maturity date shall become Lender's property and Dealer hereby waives all rights and interest in and to such information.

## V. SECURITY INTERESTS

It is the Dealer's responsibility to complete the forms and documents necessary to properly perfect the security interest of Lender in the Collateral or any Contract at the time of sale and forward them, together with the appropriate fees, to those public officials who are responsible for issuing the certificate of title, registrations and/or otherwise recording liens. The Dealer will be responsible and will reimburse Lender for any loss incurred as a result of failure to properly perfect the security interests of Lender in the Collateral of any Contract.

## VI. INDEMNIFICATION

If a buyer asserts a claim or defense to a Contract purchased by Lender and Lender suffers a loss, Dealer agrees that Lender may deduct the amount of the claim paid, plus reasonable attorney's fees and costs, from the Reserve or any of the Dealer's funds Lender may be holding under this or any prior agreement with Dealer. Dealer further agrees that if the funds Lender is holding are insufficient to repay Lender's costs in connection with any such claim or defense, Dealer will promptly remit any shortages to Lender in cash upon request.

Further, Dealer agrees that if any such claim is paid by Lender from the Reserve, Dealer will within five days after notification from Lender of the payment of any such claim tender to Lender in cash an amount sufficient to restore the Reserve to the balances therein prior to Lender's payment of the claim.

## VII. WARRANTIES

With respect to all Contracts, Dealer warrants: (a) that the facts set forth in each Contract will be true and buyer will have no defenses or counterclaims to the payment of the obligation evidenced by the Contract; (b) that the Collateral described therein is free of all liens and encumbrances of whatever nature or kind except the lien created by such Contract (and Dealer hereby agrees that Lender shall utilize the purchase price of the Contract to the extent necessary to discharge existing liens and encumbrances except the lien created by the Contract); (c) that each Contract will be genuine and in all things what it purports to be; (d) that Dealer shall have good title to the Collateral described therein and shall have the right to transfer title thereto; (e) that the Collateral shall have been sold to the buyer in a bonafide time sales transaction on the date set forth in the Contract; (f) the down payment, if any, be shown on the face thereof, will have been received by Dealer and no part thereof will have been advanced directly or indirectly by Dealer to the buyer; (g) that all parties thereto shall have the legal capacity to Contract; (h) the security interest granted to Lender in the Contract constitutes a valid first lien on the Collateral and has been filed or recorded according to the law to preserve the priority of such lien; (i) the buyer will have been furnished a completed copy of the Contract prior to the execution thereof; (j) that the Collateral shall have been duly delivered and accepted by the buyer and the Dealer will comply with Dealer's obligations with respect thereto; (k) that the Collateral will be insured in a company acceptable to Lender against such risks as Lender may require under an insurance policy acceptable to Lender; (l) that any insurance premiums or any other charges included in the Contracts have been or will be actually paid to the insurance carrier or other appropriate party; (m) that where insurance coverages are included in any Contract, Dealer will notify the insurance carrier of the assignment of the Contract to Lender and request that Lender be named beneficiary or loss payee as applicable; (n) that in the making of each Contract, Dealer has complied with all federal, state and local laws and ordinances and that Lender will suffer no loss by Dealer's failure to so comply;

-4-

This instrument was acknowledged before me on the _____ day of _____,
19___ by _____, _____
              (name of officer)                              (title of officer)
of _____ a _____ corporation
       (name of corporation acknowledging)        (state of incorporation)
on behalf of said corporation.
Given under my hand and seal of office this _____ day of _____,A.D.,19___.

GERRY RICKHOFF
COUNTY CLERK, BEXAR COUNTY, TEXAS
BY:_____ DEPUTY
OR:
NOTARY PUBLIC, STATE OF TEXAS


STATE OF TEXAS          §
                        §
COUNTY OF BEXAR         §                    ATTORNEY-IN-FACT ACKNOWLEDGMENT
     This instrument was acknowledged before me on the _____ day of _____,
19___ by _____ as attorney-in-fact on behalf
              (name of attorney-in-fact)
of _____, and the attorney-in-fact was duly
       (name of principal)
authorized in writing by his principal to execute and acknowledge the same.
Given under my hand and seal of office this _____ day of _____,A.D.,19___.

GERRY RICKHOFF
COUNTY CLERK, BEXAR COUNTY, TEXAS
BY:_____ DEPUTY
OR:
NOTARY PUBLIC, STATE OF TEXAS


STATE OF TEXAS          §
                        §
COUNTY OF BEXAR         §                    STATUTORY ACKNOWLEDGMENT
     This instrument was acknowledged before me on the _____ day of _____,
19___ by _____.
              (name or names of person or persons acknowledging)
Given under my hand and seal of office this _____ day of _____,A.D.,19___.

GERRY RICKHOFF
COUNTY CLERK, BEXAR COUNTY, TEXAS
BY:_____ DEPUTY
OR:
NOTARY PUBLIC, STATE OF TEXAS

No. 98- 0231263

NAME OF BUSINESS
HOVET MOTORCARS
9919 San Pedro
San Antonio, Tx 78216

CERTIFICATE OF
ASSUMED NAME

FILED IN MY OFFICE THIS
19 ___ DAY OF ___
___ AT O'CLOCK ___ M

GERRY RICKHOFF
COUNTY CLERK, BEXAR COUNTY, TEXAS
BY: _____ DEPUTY

Filed for Record in:
Bexar County, Tx
GERRY RICKHOFF, COUNTY CLERK
On Sep 30 1998
At 11:55am
Receipt #: 155419
Doc/Num : 98- 0231263
Deputy -Juliette Bragg

CERTIFICATE
The page to which this certificate is affixed is a full, true and correct copy of the original on file and of record in my office. ATTESTED: 11-13-98

GERRY RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
BY: _____ Deputy

## VI. INDEMNIFICATION

If a buyer asserts a claim or defense to a Contract purchased by Lender and Lender suffers a loss, Dealer agrees that Lender may deduct the amount of the claim paid, plus reasonable attorney's fees and costs, from the Reserve or any of the Dealer's funds Lender may be holding under this or any prior agreement with Dealer. Dealer further agrees that if the funds Lender is holding are insufficient to repay Lender's costs in connection with any such claim or defense, Dealer will promptly remit any shortages to Lender in cash upon request.

Further, Dealer agrees that if any such claim is paid by Lender from the Reserve, Dealer will within five days after notification from Lender of the payment of any such claim tender to Lender in cash an amount sufficient to restore the Reserve to the balances therein prior to Lender's payment of the claim.

## VII. WARRANTIES

With respect to all Contracts, Dealer warrants: (a) that the facts set forth in each Contract will be true and buyer will have no defenses or counterclaims to the payment of the obligation evidenced by the Contract; (b) that the Collateral described therein is free of all liens and encumbrances of whatever nature or kind except the lien created by such Contract (and Dealer hereby agrees that Lender shall utilize the purchase price of the Contract to the extent necessary to discharge existing liens and encumbrances except the lien created by the Contract); (c) that each Contract will be genuine and in all things what it purports to be; (d) that Dealer shall have good title to the Collateral described therein and shall have the right to transfer title thereto; (e) that the Collateral shall have been sold to the buyer in a bonafide time sales transaction on the date set forth in the Contract; (f) the down payment, if any, be shown on the face thereof, will have been received by Dealer and no part thereof will have been advanced directly or indirectly by Dealer to the buyer; (g) that all parties thereto shall have the legal capacity to Contract; (h) the security interest granted to Lender in the Contract constitutes a valid first lien on the Collateral and has been filed or recorded according to the law to preserve the priority of such lien; (i) the buyer will have been furnished a completed copy of the Contract prior to the execution thereof; (j) that the Collateral shall have been duly delivered and accepted by the buyer and the Dealer will comply with Dealer's obligations with respect thereto; (k) that the Collateral will be insured in a company acceptable to Lender against such risks as Lender may require under an insurance policy acceptable to Lender; (l) that any insurance premiums or any other charges included in the Contracts have been or will be actually paid to the insurance carrier or other appropriate party; (m) that where insurance coverages are included in any Contract, Dealer will notify the insurance carrier of the assignment of the Contract to Lender and request that Lender be named beneficiary or loss payee as applicable; (n) that in the making of each Contract, Dealer has complied with all federal, state and local laws and ordinances and that Lender will suffer no loss by Dealer's failure to so comply;

-4-

(o) that the assignment of any Contracts to Lender will not relieve Dealer of any liability Dealer may have to any parties to the Contract by virtue of the sale and Dealer will settle any claims of buyers relating to Collateral directly with them; (p) Dealer has furnished buyer all the rescission notices required by law; (q) the full amount of the stated total of payments remains unpaid and there are no set-offs or counterclaims thereto and; (r) Dealer has not knowingly communicated to Lender incorrect information relating to buyer's application or credit statement, or knowingly failed to communicate information relating to such application or credit statement; (s) or knowingly failed to communicate if a purchaser who is bona fide party to the Contract has legal capacity to make a contract and to Dealer's knowledge has never violated liquor or narcotic laws and has never been convicted of a felony; (t) that set forth any down payment by purchaser and the statement that any such down payments were made in cash and not in a trade-in of property of other goods unless the Contract so states and that no part of the down payment was loaned directly or indirectly by Dealer or anyone else to the Purchaser, that any down payment does not include any rebates, unless disclosed in writing; (u) that Purchaser has been furnished or a copy shall be furnished with blanks completely filled in before it was signed by Purchaser, and that the credit application for the Contract is true and correct and the facts set forth in each Contract are true. If any of these representations and warranties are breached and notwithstanding any other provision of this Agreement, Dealer will, upon request by Lender, purchase the affected Contract or Contracts from Lender within five business days regardless of whether the Contract or Contracts are then in default, for the unpaid balance owing thereon, including, but not limited to, the cost of any insurance premiums added by Lender, less Lender's customary prepayment rebate, plus any expenses of collection, including reasonable attorney's fees and costs.

## VIII. ENDORSEMENT OBLIGATIONS

With respect to Contracts assigned and/or endorsed to Lender "Without Recourse," Lender will be entitled to recover from Dealer the entire Reserve associated with said Contract, whether previously paid to Dealer or held by Lender, in the event a loss is sustained by Lender in connection with said Contract. Dealer further agrees to resell any repossessed Collateral, if requested to do so by Lender, from Dealer's lot or place of business for a price to be determined by Lender and Dealer. In the event of resale, Dealer may be entitled to a commission from the proceeds of the resale in an amount to be determined by Lender and Dealer. Dealer agrees that while any Collateral is held for resale, Dealer will exercise the utmost care for the Collateral and agrees to be responsible for any damages or loss to such Collateral while in Dealer's care or custody.

With respect to Contracts assigned and/or endorsed to Lender "Repurchase" or "Limited Repurchase," if Lender repossesses or recovers possession of the Collateral by reason of default by buyer under any of the terms and conditions of the Contract and Lender delivers such Collateral to Dealer at Dealer's principal office as noted in Section I or any other mutually agreeable location, then Dealer shall repurchase such Collateral "as is" upon request by Lender. In the event Lender is unable to deliver the Collateral by reason of legal impediment (including, but not limited to, action of any court or public authority,

litigation or Act of God), then Lender shall deliver the Collateral to Dealer at Dealer's principal office as noted in Section I or any other mutually agreeable location on or before 30 days after Lender recovers possession of the Collateral and Dealer shall repurchase such Collateral "as is" upon request by Lender. The repurchase price shall be an amount equal to the unpaid balance owing on such Contract, such unpaid balance to include, but is not limited to, any earned insurance premiums added to the Contract by Lender and late charges, less Lender's customary repayment rebate and less the amount of any deductible for insurable damage, provided the amount of insurable damage exceeds the amount of the deductible.

At the time of delivery of the Collateral to Dealer, Dealer shall pay to Lender the repurchase price in cash and Lender shall reassign to Dealer without recourse and without warranties of any kind, all title retention or lien instruments and all Contracts which Lender then holds upon such Collateral.

With respect to Contracts assigned and/or endorsed "Recourse" or "Limited Recourse," in the event of default by buyer under any of the terms and conditions of the Contract, Dealer agrees to pay in cash the unpaid balance of the Contract, such unpaid balance to include, but is not limited to, any earned insurance premiums added to the Contract by Lender and late charges, less Lender's customary prepayment rebate, plus all reasonable costs of repossession including reasonable attorney fees.

## IX. DEFAULT

The happening of any of the following events or conditions shall constitute a default by Dealer as such term is used herein: (a) Dealer's failure to repurchase a Contract or Collateral as required pursuant to the assignment provisions of the Contract or the terms of this Agreement; (b) Dealer's failure to perform any other obligations under the Contract or the assignment provisions of any Contract purchased by Lender or under this or any other agreement with Lender; (c) Dealer's failure to pay any indebtedness due and owing Lender under this or any other agreement with Lender; (d) Dealer ceases to do business as a going concern; (e) if any warranty, representation or statement made or furnished to Lender by or on behalf of Dealer, in connection with this Agreement or any Contract purchased by Lender is false or has been breached in any material respect; (f) Lender reasonably deems itself insecure; (g) Dealer fails to provide such statements of financial condition in the form and at the time or times as Lender may require; (h) Dealer's dissolution, termination or insolvency, inability to meet any debt as it matures, appointment of a receiver for Dealer or of its property, an assignment for the benefit of creditors or the commencement of any proceeding under any bankruptcy or insolvency law by or against Dealer and; (i) death, if Dealer is a natural person, or of any partner, if Dealer is a partnership, if Dealer should default in the performance of any of the obligations to Lender, and if a third party should make payment to Lender in respect thereto, such third party shall be subrogated to the Dealer's rights to any Reserve, to the extent of such payment.

## X. COLLECTIONS

Dealer waives presentment, demand notice and protest on all Contracts and consents that Lender may grant extensions of time, make compromises with the buyers or other persons liable on the Contracts and otherwise handle the making of collections in accordance with Lender's sole discretion, without affecting Dealer's liability hereunder. It being understood that none of the foregoing, nor any impairment of or failure or delay on Lender's part in perfecting or enforcing any rights against any person obligated with respect to any such Contract or note or any collateral security therefor, shall release or discharge Dealer from its obligations to Lender or shall affect or impair any of Lender's rights hereunder or under any specific assignment or other instrument or agreement heretofore or hereafter delivered to Lender with respect to any such Contract.

Dealer shall promptly remit all monies owing to Lender and Lender or its representatives may endorse Dealer's name on checks or any other form of payment received in respect to Contracts purchased by Lender hereunder.

## XI. BOOKS AND RECORDS

Dealer agrees that Lender or its designated representatives shall have permission to inspect all Agreements between Lender and Dealer at Dealer's place of business during Dealer's normal business hours. Dealer also agrees to sign and submit to Lender annual financial statements of Dealer's business within 60 days of their fiscal year end. Dealer further agrees to submit quarterly financial statements of Dealer's business as requested by Lender. The signed financial statements of Dealer's business will include balance sheets, cash flow statements, profit and loss statements and such other statements as Lender may require.

Dealer hereby guarantees that any financial statements required by Lender will be true and correct in all respects and Lender can continue to rely on such financial statements until such time as a written notice of change is delivered by Dealer to Lender.

## XII. GENERAL

Whenever possible, each provision of the Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement. The neuter pronoun when used herein shall include the masculine and feminine gender and also the plural.
This Agreement shall be applicable to all Contracts heretofore or hereafter purchased by Lender from Dealer and shall supersede any and all prior written or oral agreements

between Lender and Dealer relating to the purchase of Contracts. The agreements made by Dealer herein shall be in addition to, and not in limitation of, any and all agreements, warranties and representations made by Dealer in any assignment or other instrument or agreement heretofore or hereafter delivered to Lender with respect to any specific Contract.

Dealer understands that each party hereto shall do such further acts and things and execute and deliver such further documents as are reasonably necessary to carry into effect this Agreement or to better assure and confirm to the requesting party its rights, power and remedies hereunder.

Time shall be the essence hereof. Any failure or delay on Lender's part in the exercise of any right or remedy shall not operate as a waiver thereof and no single or partial exercise by Lender of any right or remedy shall preclude other or further exercise thereof or the exercise of any other rights or remedy.

CREDIT REPORTING REQUIREMENTS. Pursuant to the provisions of the Fair Credit Reporting Act (Public Law #91-508 - Title VI of the Consumer Credit Protection Act) and in connection with retail installment sales transactions submitted to Lender for purchase, the law and this Agreement require Dealer to notify each prospective buyer of Lender's name and local branch address as noted herein when such purchase is intended for personal, family or household use. This constitutes the Dealer's representation and warranty to Lender that the Dealer will comply fully with the foregoing requirement.

Lender's failure to exercise any rights hereunder shall not operate as a waiver of said rights and all rights and remedies contained herein shall be cumulative and not alternative. No waiver, modification or change of this Agreement shall be valid unless agreed to by Lender and Dealer in writing.

Parties of interest, all covenants and agreements contained in this Agreement shall bind and inure to the benefit of the heirs, personal representatives and assigns of the parties hereto, it being understood that Security Service Federal Credit Union may assign any or all Contracts purchased by Security Service Federal Credit Union from Dealer, and all duties of Dealer to Security Service Federal Credit Union hereunder shall inure to the benefit of such subsequent assignee of Security Service Federal Credit Union.

This Agreement shall be deemed a Contract made under the laws of Texas and shall be construed and enforced in accordance with and governed by the laws of Texas.

Nothing in this Agreement shall be deemed to obligate Dealer to offer or sell any Contracts to Lender or to obligate Lender to purchase any Contracts from Dealer. This Agreement does not constitute Dealer as Lender's agent or representative for any purpose. Dealer is not granted any express or implied right to bind Lender in any manner whatsoever.

Section headings are included herein solely for purposes of clarity and are not to be referred to in construing this Agreement.

This shall constitute an Agreement between Lender and Dealer, which will inure to and bind each parties' respective successors and assigns and any company affiliated with Lender which may transact business hereunder. This Agreement shall continue in effect until terminated by Lender or Dealer upon written notice to the other. Termination shall not affect the respective rights and obligations of each party as to the Contracts purchased by Lender prior to the effective date of termination.

With respect to Contracts purchased from Dealer, Lender agrees that it will not make unsolicited recommendations to its members to cancel credit insurance and/or extended service contracts.

With respect to Contracts purchased from Dealer, Lender agrees that it will not disclose unauthorized member information to lenders or other dealers. However, nothing contained herein shall prohibit Lender from disclosing information to lenders or other dealers with respect to loan payoffs, credit history and/or other related transactions at the direction of the member.

IN WITNESS WHEREOF, this Agreement has been executed the day and year first above written.

(Dealer including Assumed Names)

DBA Hoven Auto Leasing
TRIAD Motors LTD, DBA Hoven
Motorcars

By: _____ VP-OLLC
(Signature)

Printed Name: Ruhard D. Hoven JR

Title: VP.OLLC

SECURITY SERVICE
FEDERAL CREDIT UNION

By: _____
Charles A. Goss,
Senior Vice President / Lending

-9-

## ADDENDUM TO MOTOR VEHICLE RETAIL FINANCING AGREEMENT

This Addendum amends that certain Motor Vehicle Retail Financing Agreement (the "Agreement") previously entered into by and between Security Service Federal Credit Union ("SSFCU") and the automobile dealership named below ("Dealer").

In the event that SSFCU purchases a Contract from Dealer and pays to Dealer a fee or any other consideration in excess of the amount financed set forth in such Contract (a "Fee") and such Contract is, within ninety (90) days of such purchase, (1) paid in full, (2) subject to bankruptcy, (3) accelerated due to default, or (4) charged off, or if the collateral securing such Contract is repossessed within ninety (90) days of such purchase, then any Fee paid to the Dealer with respect to that Contract shall be returned to SSFCU.

Dealer agrees to return to SSFCU the Fee by one or more of the following methods, or by any combination thereof, chosen by SSFCU:

1. Dealer will repay the Fee to SSFCU upon demand;
2. SSFCU may deduct the Fee from any future Fees payable to Dealer under the Agreement; or
3. SSFCU may deduct the entire Fee from any other funds SSFCU may owe the Dealer.

This Addendum will survive termination or suspension of the Agreement.

This Addendum will become effective upon the last date set forth below.

SECURITY SERVICE FEDERAL CREDIT UNION:

By: _____

Name: _____CHARLES A. GOSS_____

Title: _____EVP / CLO_____

Date: _____11 - 13 - 2019_____

#1164

Triad Motors Ltd, dba Hovey Motorcars

DEALERSHIP NAME

By: _____ VP Pres

Name: ____Richard D Hovey Jr_____

Title: _____Pres._____

Date: _____1-13-2020_____

October 1, 2019



## ADDENDUM TO MOTOR VEHICLE RETAIL FINANCING AGREEMENT

This Addendum amends that certain Motor Vehicle Retail Financing Agreement (the "Agreement") previously entered into by and between Security Service Federal Credit Union ("SSFCU") and the automobile dealership named below ("Dealer").

In the event that SSFCU purchases a Contract from Dealer and pays to Dealer a fee or any other consideration in excess of the amount financed set forth in such Contract (a "Fee") and such Contract is, within ninety (90) days of such purchase, (1) paid in full, (2) subject to bankruptcy, (3) accelerated due to default, or (4) charged off, or if the collateral securing such Contract is repossessed within ninety (90) days of such purchase, then any Fee paid to the Dealer with respect to that Contract shall be returned to SSFCU.

Dealer agrees to return to SSFCU the Fee by one or more of the following methods, or by any combination thereof, chosen by SSFCU:

1. Dealer will repay the Fee to SSFCU upon demand;
2. SSFCU may deduct the Fee from any future Fees payable to Dealer under the Agreement; or
3. SSFCU may deduct the entire Fee from any other funds SSFCU may owe the Dealer.

This Addendum will survive termination or suspension of the Agreement.

This Addendum will become effective upon the last date set forth below.

SECURITY SERVICE FEDERAL CREDIT UNION:

By: _____

Name: _____

Title: _____

Date: _____

Due
Au 11/13/19

Triad Motors Ltd, dba Hovey Motorcars

DEALERSHIP NAME

By: _____

Name: Richard D Hovey, Jr

Title: Pres

Date: 11·12·2019

1164

October 1, 2019

# ADDENDUM TO DEALER AGREEMENT

## SECURITY SERVICE FEDERAL CREDIT UNION

This is an ADDENDUM to the DEALER AGREEMENT by and between SECURITY SERVICE FEDERAL CREDIT UNION ("SSFCU") and the Dealer signing this ADDENDUM ("Dealer"), for and in consideration of placement of ADDENDUM IV, "SECURITY INTERESTS", as an addendum to the NON-RECOURSE MOTOR VEHICLE RETAIL FINANCING AGREEMENT on file for the DEALER listed below.

### IV. SECURITY INTERESTS

It is Dealer's responsibility to perfect the security interest of Lender in the Collateral. At the time of sale, Dealer will forward such forms and documents, together with the appropriate fees, to those public officials who are responsible for issuing the certificate of title, registrations, and/or otherwise recording liens. Dealer guarantees that a first-priority perfected security interest in and to the Collateral will be recorded in favor of Lender. Lender will receive a properly recorded title to the Collateral or a properly recorded financing statement on the Collateral within one hundred and twenty (120) days from the Contract's date. In the event of a breach of this Section, Dealer agrees to purchase the affected Contract from Lender, upon demand, for the unpaid balance owing thereon, including, but not limited to, the cost of any insurance premiums added by Lender, late fees and penalties, and any expenses of collection, including reasonable attorney's fees and costs. Dealer will be responsible and will reimburse Lender for any loss incurred, including reasonable attorney's fees and costs, as a result of failure to properly perfect the security interests of Lender in the Collateral of any Contract.

**IN WITNESS HEREOF,** the parties hereto have executed this ADDENDUM IV by duly authorized representatives on the this the 4 day of MARCH , 2010 .

SECURITY SERVICE
FEDERAL CREDIT UNION

Hovey MotorCARS
(Dealership Name)

By: _____

MICHAEL G. CHAPMAN
SENIOR VICE PRESIDENT / LENDING

By: _____ VP of

Name: Richard D Hovey Jr

Title: V.P. of QLLC.



# ADDENDUM TO DEALER'S AGREEMENT

# RESERVE SCHEDULE A

Pursuant to the certain Motor Vehicle Retail Financing Agreement (hereinafter "Agreement") entered into by and between Security Service Federal Credit Union (hereinafter "SSFCU") and TRIAD MOTORS LTD, DBA HOVEY MOTORCARS hereinafter "Dealer") on MARCH 26 , 2002 ; SSFCU for itself and its affiliates, subsidiaries, successors and assigns and Dealer agree that Dealer shall be allowed to participate in a portion of the finance charge attributable to each Retail Installment Sales Contract (hereinafter "Contract") purchased by SSFCU from Dealer in which the Annual Percentage Rate (hereinafter "APR") specified on the Contract exceeds SSFCU's Net Retention Rate. SSFCU and Dealer hereby agree to the following terms and conditions for the management and operation of this Finance Charge Participation Program.

1.  SSFCU will credit to a Reserve Account in the name of Dealer a portion of the unearned finance charge attributable to each Contract purchased by SSFCU from Dealer in which the APR specified on the Contract exceeds SSFCU's Net Retention Rate. The amount of this credit shall equal the amount by which the finance charge specified on the Contract exceeds a finance charge calculated at SSFCU's Net Retention Rate as such Rate may be adjusted from time-to-time by SSFCU in its sole discretion. Dealer understands that the Reserve Account will not be funded and shall not be an interest-bearing account.

2.  At such time as the net balance of the Reserve Account exceeds one percent (1%) of the current gross outstanding balance of all Contracts purchased from Dealer, and provided Dealer is current with all other obligations to SSFCU, an advance from the Reserve Account may be paid to Dealer in an amount equal to such excess. This advance, if any, shall be made monthly. In computing the net balance in the Reserve Account, SSFCU shall first debit the Reserve Account of the following:

-1-

a. The total amount of any reserve participation attributable to any Contract which SSFCU has charged off any amount owing on such Contract.

b. A proportional amount of the reserve participation attributable to any Contract that has been prepaid in full whether by voluntary prepayment, default and acceleration or otherwise, by the Customer or Dealer and SSFCU has not otherwise charged off any amount owing on such Contract. Debits to the Reserve Account for such Contracts shall be in an amount which bears the same proportion to the original credit to the Reserve Account as the rebate to the customer bears to the original finance charged disclosed on the Contract.

c. In the event of a partial prepayment of a Contract resulting from the cancellation of any insurance policy, automobile club membership or service contract, the cost of which was originally included as part of the "Amount Financed" on the Contract, the resulting unearned finance charges attributable to such partial prepayment may be debited from the Reserve Account. Debits to the Reserve Account for any such partial prepayments shall be in an amount which bears the same proportion to the original credit to the Reserve Account as the rebate to the customer bears to the original finance charge disclosed on the Contract.

d. At its option, SSFCU shall also be allowed to debit the Reserve Account for the amount of any other indebtedness currently owing to SSFCU.

3. Dealer agrees to pay to SSFCU, upon demand, any amount which SSCFU would otherwise be entitled to debit from the Reserve Account as provided herein, if such debit would cause the net balance in the Reserve Account to be reduced below the gross outstanding percentage balance of all contracts as specified in Section 2 herein.

4. If SSFCU should ever discontinue its retail financing arrangements with Dealer as provided for in the Agreement, SSFCU may hold and apply the Reserve Account to any indebtedness due or which may become due from Dealer to SSFCU. At such time as all Contracts have been paid in full and all other amounts due or owing by Dealer to SSFCU have been satisfied, the remaining balance in the Reserve Account, if any, shall be considered earned and will be paid to Dealer.

5. Dealer hereby grants to SSFCU a security interest in the Reserve Account. This Reserve Account shall be security for, and not in lieu of, Dealer's obligations to SSFCU.

6. This Schedule only applies to the management and payment of Dealer's participation in finance charges attributable to those Contracts purchased by SSFCU from Dealer. The terms and conditions of this Schedule shall be in addition to the terms and conditions of the Agreement between Dealer and SSFCU. Nothing herein, unless specifically modified hereby, shall be construed to alter or amend any other rights and obligations of Dealer to SSFCU arising out of any other Agreements.

IN WITNESS WHEREOF the parties hereto have executed this Reserve Schedule by duly authorized representatives this 26th day of March , 2002 .

TRIAD MOTORS LTD,

DBA HOVEY MOTORCARS
(Dealer including Assumed Names)

By: _____
(Signature)

SECURITY SERVICE
FEDERAL CREDIT UNION

Charles A. Goss, Senior Vice President / Lending

-3-

Hovey Authorizat...

# CERTIFICATE OF LIMITED PARTNERSHIP RESOLUTION
### (Retail Authorization)

I, _Richard D Hovey Sr_ Secretary of _TRIAD Motors LTD_, the "Limited Partnership," do hereby certify that I am the custodian of the records and minutes of the Partnership Meetings of the Limited Partnership, and that the following resolutions were duly and legally passed at a properly convened Partnership Meeting of the "Limited Partnership" held on _September, 1998_, that the resolutions have not been rescinded and are still in full force and effect, and that the persons therein named are presently occupying the offices therein specified:

RESOLVED, That the Limited Partnership may enter into retail installment contracts with buyers, from time to time for the sale of its goods and services, and the Limited Partnership may assign from time to time certain such retail installment contracts to Security Service Federal Credit Union, all upon such terms and conditions as the hereinafter named persons may deem proper;

FURTHER RESOLVED, That any one of the following persons may execute on behalf of the Limited Partnership such retail installment contracts;

| NAME | TITLE | SIGNATURE |
|---|---|---|
| 1. Richard D. Hovey Jr | V.P. of QLLC | |
| 2. Richard D Hovey Sr | Secretary | |
| 3. Todd A Hovey | Member | |
| 4. | | |

FURTHER RESOLVED, That any one of the following persons may execute an assignment of any or all such retail installment contracts to Security Service Federal Credit Union and any one of the following persons may execute such other document or instruments as may be required by Security Service Federal Credit Union to consummate the assignment contemplated hereby:

| NAME | TITLE | SIGNATURE |
|---|---|---|
| 1. Richard D Hovey Jr | VP QLLC | |
| 2. Richard D Hovey Sr | Secretary | |
| 3. Todd A. Hovey | member | |
| 4. | | |

FURTHER RESOLVED, That the above persons are authorized to execute retail installment contracts and assignments thereof to Security Service Federal Credit Union.

In WITNESS WHEREOF, on the _5_ day of _December_, _2005_, I have hereunto set my hand as Secretary of Company, and affixed the official seal of Company.

Secretary of Limited Partnership

(Limited Partnership Seal)



**Texas Department**
*of* **Motor Vehicles**
**MOTOR VEHICLE DIVISION**

# MOTOR VEHICLE DEALER

GENERAL DISTINGUISHING NUMBER: P150529

TRIAD MOTORS, LTD.
HOVEY MOTORCARS,
30775 INTERSTATE 10 W
BOERNE, TEXAS 78006-9211

EXPIRES: 08-31-2020
PHYSICAL LOCATION:
30775 INTERSTATE 10 W
BOERNE, TEXAS 78006-9211

**THIS DEALER IS LICENSED AS A MOTOR VEHICLE DEALER.**

ADDITIONAL LOCATION(S):

N/A

#1104

HAVING SATISFIED THE APPLICABLE REQUIREMENTS OF CHAPTER 2301 OF THE TEXAS OCCUPATIONS CODE, CHAPTER 503 OF THE TEXAS TRANSPORTATION CODE, AND THE RULES OF THE BOARD, THE PERSON NAMED ABOVE IS HEREBY LICENSED WITH THE TEXAS DEPARTMENT OF MOTOR VEHICLES, MOTOR VEHICLE DIVISION.

*Daniel Avitia*

Daniel Avitia, Director
Texas Department of Motor Vehicles
Motor Vehicle Division

WARNING: PENAL CODE SECTION 37.10, PROVIDES THAT TAMPERING WITH A GOVERNMENTAL RECORD IS AN OFFENSE PUNISHABLE AS A SECOND-DEGREE FELONY.

This instrument was acknowledged before me on the ____ day of ____, 19____ by ____, ____ (name of officer) (title of officer) of ____, a ____ corporation (name of corporation acknowledging) (state of incorporation) on behalf of said corporation.

Given under my hand and seal of office this ____ day of ____, A.D., 19____.

GERRY RICKHOFF
COUNTY CLERK, BEXAR COUNTY, TEXAS

BY: _____ DEPUTY
OR: _____
NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS §
§ ATTORNEY-IN-FACT ACKNOWLEDGMENT
COUNTY OF BEXAR §

This instrument was acknowledged before me on the ____ day of ____, 19____ by ____ as attorney-in-fact on behalf (name of attorney-in-fact) of ____, and the attorney-in-fact was duly (name of principal) authorized in writing by his principal to execute and acknowledge the same.

Given under my hand and seal of office this ____ day of ____, A.D., 19____.

GERRY RICKHOFF
COUNTY CLERK, BEXAR COUNTY, TEXAS

BY: _____ DEPUTY
OR: _____
NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS §
§ STATUTORY ACKNOWLEDGMENT
COUNTY OF BEXAR §

This instrument was acknowledged before me on the ____ day of ____, 19____ by ____ (name or names of person or persons acknowledging)

Given under my hand and seal of office this ____ day of ____, A.D., 19____.

GERRY RICKHOFF
COUNTY CLERK, BEXAR COUNTY, TEXAS

BY: _____ DEPUTY
OR: _____
NOTARY PUBLIC, STATE OF TEXAS

No. 98- 0231263

NAME OF BUSINESS
ROYAL MOTORCARS
9919 San Pedro
San Antonio, Tx 78216

CERTIFICATE OF
ASSUMED NAME

FILED IN MY OFFICE THIS
____ DAY OF
19 ____ AT ____ O'CLOCK ____M

GERRY RICKHOFF
COUNTY CLERK, BEXAR COUNTY, TEXAS

BY: _____ DEPUTY

Filed for Record in:
Bexar County, TX
GERRY RICKHOFF, COUNTY CLERK

On Sep 30 1998
At 11:55am

Receipt #: 165819
Doc/Num : 2.00
Doc/Nmbr : 2.00

Doc/Num : 98- 0231263

Deputy -Juliette Droga

CERTIFICATE
The page to which this certificate is affixed is a full, true and correct copy of the original on file and of record in my office. ATTESTED: 11-13-98
GERRY RICKHOFF
COUNTY CLERK
BEXAR COUNTY, TEXAS
BY: ____ Deputy



## MOTOR VEHICLE RETAIL INSTALLMENT SALES CONTRACT
### SIMPLE FINANCE CHARGE

CONTRACT#: 0322599

| | |
|---|---|
| BUYER __DOUGLAS A JOHNSON__ | SELLER/CREDITOR __HOVEY MOTORCARS__ |
| ADDRESS : | ADDRESS __30775 IH 10 WEST__ |
| CITY ____ STATE __TX__ ZIP ____ | CITY __BOERNE__ STATE __TX__ ZIP __78006__ |
| PHONE ____ | PHONE __210-384-0084__ |

| |
|---|
| CO-BUYER __N/A__ |
| ADDRESS __N/A__ |
| CITY __N/A__ STATE __N/A__ ZIP __N/A__ |
| PHONE __N/A__ |

The Buyer is referred to as "you" or "your." The Seller is referred to as "we" or "us." This contract may be transferred by the Seller.

**PROMISE TO PAY:** The credit price is shown below as the "Total Sales Price." The "Cash Price" is also shown in the itemization of Amount Financed. By signing this contract, you choose to purchase the vehicle on credit according to the terms of this contract. You agree to pay us the Amount Financed, Finance Charge, and any other charges in this contract. You agree to make payments in U.S. funds according to the Payment Schedule in this contract. If more than one person signs as a buyer, you agree to keep all the promises in this agreement even if the others do not.

You have thoroughly inspected, accepted, and approved the vehicle in all respects.

### VEHICLE IDENTIFICATION

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER | | USE FOR WHICH PURCHASED |
|---|---|---|---|---|---|
| | | | | ☐ NEW | PERSONAL, FAMILY, OR HOUSEHOLD, UNLESS OTHERWISE INDICATED BELOW |
| | | | | ☐ DEMONSTRATOR | If either of the boxes below is checked, Chapter 353 of the Texas Finance Code applies to this Contract. |
| | | | | ☐ FACTORY OFFICIAL/EXECUTIVE | ☐ BUSINESS OR COMMERCIAL |
| 2022 | RAM1 | 2500 | 3C6UR5DL4NG123805 | ☒ USED | ☐ AGRICULTURAL ☐ N/A |

Trade-in: Make __N/A__ Model __N/A__
Year __N/A__ VIN __N/A__ License No. __N/A__

### FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 2600.00 |
|---|---|---|---|---|
| 8.74 % | $ 14777.55 | $ 50401.89 | $ 65179.44 | $ 67779.44 |

(e) means an estimate

**SERVICING AND COLLECTION CONTACTS**
We may try to contact you at any mailing address, e-mail address, or phone number you give us as the law allows. We may try to contact you in writing (including mail, e-mail, and text messages) and by phone (including prerecorded or artificial voice messages and automatic telephone dialing systems).

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 72 | $ 905.27 | MONTHLY | beginning __05/09/2024__ |
| N/A | $ N/A | N/A | |
| | | N/A | |

**Returned Check Charge:** You agree to pay a charge of $ __30__ if any check you give us is dishonored or any electronic payment is returned unpaid.

**Late Charge:** If we do not receive your entire payment within __15__ days after it is due (10 days if you are buying a heavy commercial vehicle), you will pay a late charge of __5%__ of the scheduled payment.
**Prepayment.** If you pay early, you will not have to pay a penalty.
**Security Interest.** We will have a security interest in the vehicle being purchased.
**Additional Information:** See this document for more information about nonpayment, default, security interests, and any required repayment in full before the scheduled date.

**OCCC NOTICE. For questions or complaints about this contract, contact __SSFCU__ at __888-415-7878__.** The Office of Consumer Credit Commissioner (OCCC) is a state agency, and it enforces certain laws that apply to this contract. If a complaint or question cannot be resolved by contacting the creditor, consumers can contact the OCCC to file a complaint or ask a general credit-related question. OCCC address: 2601 N. Lamar Blvd., Austin, Texas 78705. Phone: (800) 538-1579. Fax: (512) 936-7610. Website: occc.texas.gov. E-mail: consumer.complaints@occc.texas.gov.



EXHIBIT
B

## ITEMIZATION OF AMOUNT FINANCED

1 Cash Price (including any accessories, services, taxes,

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| SALES TAX | $ | 2874.69 | , | N/A | $ | N/A | , | | | |
| N/A | $ | N/A | , and | N/A | $ | N/A | ) $ | 48869.69 | (1) | |

2 Total Downpayment = (if negative, enter "0" and see Line 4A below)

| | | |
|---|---|---|
| Gross Trade-In | $ | N/A |
| -- Pay Off Made By Seller to N/A | $ | N/A |
| -- Cash Paid to Buyer for Trade-In | $ | N/A |
| = Net Trade-In | $ | N/A |
| + Cash | $ | 2600.00 |
| + Mfrs. Rebate | $ | N/A |
| + Other (describe) N/A | $ | N/A |
| + Other (describe) N/A | $ | N/A |
| + Other (describe) N/A | $ | N/A |
| + Other (describe) N/A | $ | N/A |
| + Other (describe) Trade-In Credit Agreement Benefit | $ | N/A |
| Total Downpayment | $ | 2600.00 (2) |

3 Unpaid Balance of Cash Price (1 minus 2) ............... $ 46269.69 (3)

4 Other Charges Including Amounts Paid to Others on Your Behalf
(Seller may keep part of these amounts.):

A Net trade-in payoff to N/A ............................ $ N/A

B Cost of Optional Credit Insurance Paid to Insurance Company or Companies.

| | | | | |
|---|---|---|---|---|
| Life | $ | N/A | | |
| Disability | $ | N/A | $ | N/A |

C Other Optional Insurance Paid to Insurance Company or Companies ... $ N/A

D Official Fees Paid to Government Agencies

| | | | | |
|---|---|---|---|---|
| 1) to ST OF TX | for ROAD & BRIDGE FEE | | $ | 10.00 |
| 2) to N/A | for N/A | | $ | N/A |
| 3) to N/A | for N/A | | $ | N/A |

E Debt Cancellation Agreement Fee Paid to the Seller ......... $ N/A

F Dealer's Inventory Tax (If Not Included in Cash Price) ...... $ 71.20

G Sales Tax (If Not Included in Cash Price) ............... $ N/A

H Other Taxes (If Not Included in Cash Price) ............. $ N/A

I Government License and/or Registration Fees

| | | |
|---|---|---|
| BUYERS TAG 5.00 | | |
| REG FEE - DPS 1.00 | $ | 6.00 |

J Government Certificate of Title Fees .................. $ 28.00

K Government Vehicle Inspection Fees

| | | |
|---|---|---|
| to state $ 7.50 to inspection station $ N/A | $ | 7.50 |

L Deputy Service Fee Paid to Dealer ................... $ N/A

M Documentary Fee (Cargo Documental) ................. $ 150.00

A DOCUMENTARY FEE IS NOT AN OFFICIAL FEE. A DOCUMENTARY FEE IS NOT REQUIRED BY LAW, BUT MAY BE CHARGED TO BUYERS FOR HANDLING DOCUMENTS RELATING TO THE SALE. A DOCUMENTARY FEE MAY NOT EXCEED A REASONABLE AMOUNT AGREED TO BY THE PARTIES. THIS NOTICE IS REQUIRED BY LAW. UN CARGO DOCUMENTAL NO ES UN CARGO OFICIAL. LA LEY NO EXIGE QUE SE IMPONGA UN CARGO DOCUMENTAL, PERO ÉSTE PODRÍA COBRARSE A LOS COMPRADORES POR EL MANEJO DE LA DOCUMENTACIÓN EN RELACIÓN CON LA VENTA. UN CARGO DOCUMENTAL NO PUEDE EXCEDER UNA CANTIDAD RAZONABLE ACORDADA POR LAS PARTES. ESTA NOTIFICACIÓN SE EXIGE POR LEY.

N Other Charges (Seller must identify who is paid and describe purpose.)

| | | | |
|---|---|---|---|
| to State | for Plate Transfer Fee | $ | N/A |
| to Seller | for Trade-In Credit Agreement | $ | N/A |
| to HOVEY MOTORCARS | for ENDURANCE DEALER SERV | $ | 3101.00 |
| to N/A | for N/A | $ | N/A |
| to HOVEY MOTORCARS | for WISE FI GAP | $ | 695.00 |
| to HOVEY MOTORCARS | for WINDSHIELD STICKER | $ | 50.75 |
| to HOVEY MOTORCARS | for STATE INSPECTION FEE | $ | 7.00 |
| to HOVEY MOTORCARS | for CHILD SAFETY | $ | 1.00 |
| to HOVEY MOTORCARS | for PROCESSING & HANDLING | $ | 4.75 |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |
| to N/A | for N/A | $ | N/A |

Total Other Charges and Amounts Paid to Others on Your Behalf .. $ 4132.20 (4)

5 Amount Financed (3 + 4) ........................... $ 50401.89 (5)

---

**PROPERTY INSURANCE.** You must keep the collateral insured against damage or loss in the amount you owe. You must keep this insurance until you have paid all that you owe under this contract. You may obtain property insurance from anyone you want or provide proof of insurance you already have. The insurer must be authorized to do business in Texas. You agree to give us proof of insurance. You must name us as the person to be paid under the policy in the event of damage or loss.

If any insurance is checked below, policies or certificates from the insurance companies will describe the terms, conditions, and deductibles.

### Optional Credit
### Life and Credit Disability Insurance

Credit life insurance and credit disability insurance are not required to obtain credit. They will not be provided unless you sign and agree to pay the extra cost. Your decision to buy or not buy these insurance coverages will not be a factor in the credit approval process.

| | | | |
|---|---|---|---|
| ☐ Credit Life, one buyer | $ N/A | Term | N/A |
| ☐ Credit Life, both buyers | $ N/A | Term | N/A |
| ☐ Credit Disability, one buyer | $ N/A | Term | N/A |
| ☐ Credit Disability, both buyers | $ N/A | Term | N/A |

N/A
(Insurance Company)

N/A
(Home Office Address)

Credit life insurance pays only the amount you would owe if you paid all your payments on time. Credit disability insurance does not cover any increase in your payment or in the number of payments.

If the term of the insurance is 121 months or longer, the premium is not fixed or approved by the Texas Insurance Commissioner.

You want the insurance indicated above.

| | |
|---|---|
| X N/A | N/A |
| Buyer's signature | Date |
| X N/A | N/A |
| Co-Buyer's signature | Date |

### Optional Insurance Coverages
### and Debt Cancellation Agreement

The granting of credit will not be dependent on the purchase of either the insurance coverages or the debt cancellation agreement described below. It will not be provided unless you sign and agree to pay the extra cost. The credit approval process will not be affected by whether or not you buy these insurance coverages or the debt cancellation agreement.

| Coverage | Term in Months | | Premium or Fee |
|---|---|---|---|
| GAP* | 72 | ☐ $ | 695.00 |
| N/A | N/A | ☐ $ | N/A |
| N/A | N/A | ☐ $ | N/A |
| Debt Cancellation Agreement** | N/A | $ | N/A |

FINANCIAL GAP ADMINISTRATOR LLC
(Insurance Company)

P.O BOX 22439 St Louis, MO 63132
(Home Office Address)

*If the vehicle is determined to be a total loss, GAP insurance will pay us the difference between the proceeds of your basic collision policy and the amount you owe on the vehicle, minus your deductible. You can cancel that insurance without charge for 10 days from the date of this contract.

**WE WILL CANCEL CERTAIN AMOUNTS YOU OWE UNDER THIS CONTRACT IN THE CASE OF A TOTAL LOSS OR THEFT OF THE VEHICLE AS STATED IN THE DEBT CANCELLATION AGREEMENT. You can cancel the debt cancellation agreement without charge for a period of 30 days from the date of this contract, or for the period stated in the debt cancellation agreement, whichever period ends later. If the box next to a premium for an insurance coverage included above is marked, that premium is not fixed or approved by the Texas Insurance Commissioner. A debt cancellation agreement is not insurance and is regulated by the Office of the Consumer Credit Commissioner.

For the premiums or fees included above, you want the related optional coverages and debt cancellation agreement.

| | |
|---|---|
| X [signature] | 03/25/2024 |
| Buyer's signature | Date |
| X N/A | N/A |
| Co-Buyer's signature | Date |

**LIABILITY INSURANCE:** THIS CONTRACT DOES NOT INCLUDE INSURANCE COVERAGE FOR PERSONAL LIABILITY AND PROPERTY DAMAGE CAUSED TO OTHERS.

---

Buyer Initials X [initials] Co-Buyer Initials X N/A

88963*1*HOV-FI

## 1. FINANCE CHARGE AND PAYMENTS

**a. HOW WE FIGURE THE FINANCE CHARGE.** We figure the Finance Charge using the true daily earnings method as defined by the Texas Finance Code. Under the true daily earnings method, the Finance Charge will be figured by applying the daily rate to the unpaid portion of the Amount Financed for the number of days the unpaid portion of the Amount Financed is outstanding. The daily rate is 1/365th of the Annual Percentage Rate. The unpaid portion of the Amount Financed does not include late charges or return check charges.

**b. HOW WE WILL APPLY YOUR PAYMENTS.** We will apply your payments in the following order:
1. earned but unpaid finance charge; and
2. to anything else you owe under this agreement.

**c. HOW LATE OR EARLY PAYMENTS CHANGE WHAT YOU MUST PAY.** We based the Finance Charge, Total of Payments, and Total Sale Price as if all payments were made as scheduled. If you do not timely make all your payments in at least the correct amount, you will have to pay more Finance Charge. If that happens, your last payment will be more than your final scheduled payment, or at our option, you will have to pay more payments of the same amount as your scheduled payment with a smaller last payment. If you make scheduled payments early, your Finance Charge will be reduced (less). If you make your scheduled payments late, your Finance Charge will increase. We will send you a notice telling you about these changes before the final scheduled payment is due.

**d. TRANSFER OF RIGHTS.** We may transfer this contract to another person. That person will then have all our rights, privileges, and remedies.

**e. SPECIAL PROVISIONS FOR BALLOON PAYMENT CONTRACTS.** A balloon payment is a scheduled payment more than twice the amount of the average of your scheduled payments, other than the downpayment, that are due before the balloon payment. You can pay all you owe when the balloon payment is due and keep your vehicle. If you buy the vehicle primarily for personal, family, or household use, you can enter into a new written agreement to refinance the balloon payment when due without a refinancing fee. If you refinance the balloon payment, your periodic payments will not be larger or more often than the payments in this contract. The annual percentage rate in the new agreement will not be more than the Annual Percentage Rate in this contract. This provision does not apply if your Payment Schedule has been adjusted to your seasonal or irregular income.

## 2. YOUR OTHER PROMISES TO US

**a. USE AND TRANSFER OF THE VEHICLE.** You will not sell or transfer the vehicle without our written permission. If you do sell or transfer the vehicle, this will not release you from your obligations under this contract, and we may charge you a transfer of equity fee of $25.00 ($50 for a heavy commercial vehicle). You will promptly tell us in writing if you change your address or the address where you keep the vehicle. We agree you may remove the vehicle from the U.S. for 72 hours or less, if the vehicle will continue to be covered by the insurance this contract requires. Otherwise, you agree not to remove the vehicle from the U.S. without our written permission.

**b. CARE OF THE VEHICLE.** You agree to keep the vehicle free from all liens, and claims except those that secure this contract. You will timely pay all taxes, fines, or charges pertaining to the vehicle. You will keep the vehicle in good repair. You will not allow the vehicle to be seized or placed in jeopardy or use it illegally. You must pay all you owe even if the vehicle is lost, damaged or destroyed. If a third party takes a lien or claim against or possession of the vehicle, we may pay the third party cost required to free the vehicle from all liens or claims. We may immediately demand that you pay us the amount paid to the third party for the vehicle. If you do not pay this amount, we may repossess the vehicle and add that amount to the amount you owe. If we do not repossess the vehicle, we may still demand that you pay us, but we cannot compute a finance charge on this amount.

**c. SECURITY INTEREST.** To secure all that you owe on this contract and all your property, you give us a security interest in:
1. The vehicle including all accessories and parts now or later attached and any other goods financed in this contract;
2. All insurance proceeds and other proceeds received for the vehicle;
3. Any insurance policy, service contract or other contract financed by us and any proceeds of those contracts; and
4. Any refunds of charges included in this contract for insurance or service contracts.
This security interest also secures any extension or modification of this contract. The certificate of title must show our security interest in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.

**d. AGREEMENT TO KEEP VEHICLE INSURED.** You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. The insurer must be authorized to do business in Texas.

**e. OUR RIGHT TO PURCHASE REQUIRED INSURANCE IF YOU FAIL TO KEEP THE VEHICLE INSURED.** If you fail to give us proof that you have insurance, we may buy physical damage insurance. We may buy insurance that covers your interest and our interest in the vehicle, or we may buy insurance that covers our interest only. You will pay the premium for the insurance and a finance charge at the contract rate. If we obtain collateral protection insurance, we will mail notice to your last known address shown in our file.

**f. PHYSICAL DAMAGE INSURANCE PROCEEDS.** You must use physical damage insurance proceeds to repair the vehicle, unless we agree otherwise in writing. However, if the vehicle is a total loss, you must use the insurance proceeds to pay what you owe us. You agree that we can use any proceeds from insurance to repair the vehicle, or we may reduce what you owe under this contract. If we apply insurance proceeds to the amount you owe, they will be applied to your payments in the reverse order of when they are due. If your insurance on the vehicle or credit insurance doesn't pay all you owe, you must pay what is still owed. Once all amounts owed under this contract are paid, any remaining proceeds will be paid to you.

**g. RETURNED INSURANCE PREMIUMS AND SERVICE CONTRACT CHARGES.** If we get a refund on insurance or service contracts, or other contracts included in the cash price, we will subtract it from what you owe. Once all amounts owed under this contract are paid, any remaining refunds will be paid to you.

**h. APPLICATION OF CREDITS.** Any credit that reduces your debt will apply to your payments in the reverse order of when they are due, unless we decide to apply it to another part of your debt. The amount of the credit and all finance charge or interest on the credit will be applied to your payments in the reverse order of your payments.

## 3. IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES

**a. LATE CHARGE.** You will pay us a late charge as agreed to in this contract when it accrues.

**b. DEFAULT.** You will be in default if:
1. You do not pay any amount when it is due;
2. You give false, incomplete, or misleading information during credit application;
3. You file bankruptcy, bankruptcy is filed against you, or the vehicle becomes involved in a bankruptcy.
4. You allow a judgment to be entered against you or the collateral; or
5. You break any of your promises in this agreement.
If you default, we can exercise our rights under this contract and our other rights under the law.

**c. OUR RIGHT TO DEMAND PAYMENT IN FULL.** If you default, or we believe in good faith that you are not going to keep any of your promises, we can demand that you immediately pay all that you owe. We don't have to give you notice that we are demanding or intend to demand immediate payment of all that you owe.

**d. REPOSSESSION.** If you default, we may repossess the vehicle from you if we do so peacefully. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If any personal items are in the vehicle, we can store them for you and give you written notice at your last known address shown on our records within 15 days of discovering that we have your personal items. If you do not ask for these items back within 31 days from the day we mail or deliver the notice to you, we may dispose of them as applicable law allows. Any accessory, equipment, or replacement part stays with the vehicle.

**e. YOUR RIGHT TO REDEEM.** If we take your vehicle, we will tell you how much you have to pay to get it back. If you do not pay us to get the vehicle back, we can sell it or take other action allowed by law. Your right to redeem ends when the vehicle is sold or we have entered into a contract for sale or accepted the collateral as full or partial satisfaction of a contract.

**f. DISPOSITION OF THE VEHICLE.** If you don't pay us to get the vehicle back, we can sell it or take other action allowed by law. If we sell the motor vehicle in a public or private sale, we will send you notice at least 10 days before we sell it. We can use the money we get from selling it to pay allowed expenses and to reduce the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. If any money is left, we will pay it to you unless we must pay it to someone else. If the money from the sale is not enough to pay all you owe, you must pay the rest of what you owe us plus interest. If we take or sell the vehicle, you will give us the certificate of title and any other document required by state law to record transfer of title.

88963*1*HOV-FI

Buyer Initials X _____ Co-Buyer Initials X _N/A_

03/25/2024   03:24 pm

g. **COLLECTION COSTS.** If we hire an attorney who is not our employee to enforce this contract, you will pay reasonable attorney's fees and court costs as the applicable law allows. You will also pay our reasonable out-of-pocket expenses incurred in connection with retaking, holding, and selling the vehicle as the applicable law allows.

h. **CANCELLATION OF OPTIONAL INSURANCE AND SERVICE CONTRACTS.** This contract may contain charges for insurance or service contracts or for services included in the cash price. If you default, you agree that we can claim benefits under these contracts to the extent allowable, and terminate them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is damaged or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

4. **INTEGRATION AND SEVERABILITY CLAUSE**
This contract contains the entire agreement between you and us relating to the sale and financing of the vehicle. If any part of this contract is not valid, all other parts stay valid.

5. **LEGAL LIMITATIONS ON OUR RIGHTS**
If we don't enforce our rights every time, we can still enforce them later. We will exercise all of our rights in a lawful way. You don't have to pay finance charge or other amounts that are more than the law allows. This provision prevails over all other parts of this contract and over all our other acts.

6. **SELLER'S DISCLAIMER OF WARRANTIES**
Unless the seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
**This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.**

7. **Used Car Buyers Guide.** The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.
**Spanish Translation:** Guía para compradors de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

8. **APPLICABLE LAW**
Federal and Texas law apply to this contract.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

This PROVISION applies to this contract only if the vehicle financed in the contract was purchased for personal, family, or household use.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

Any change to this contract must be in writing. Both you and we must sign it. No oral changes to this contract are enforceable.

Buyer X _____    Co-Buyer X _____ N/A _____

See back for other important agreements.

**CONSUMER WARNING: Notice to the buyer--Do not sign this contract before you read it or if it contains any blank spaces. You are entitled to a copy of the contract you sign. Under the law, you have the right to pay off in advance all that you owe and under certain conditions may save a portion of the finance charge. You will keep this contract to protect your legal rights.**

**BUYER'S ACKNOWLEDGEMENT OF CONTRACT RECEIPT: YOU AGREE TO THE TERMS OF THIS CONTRACT AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF IT. YOU CONFIRM THAT BEFORE YOU SIGNED THIS CONTRACT, WE GAVE IT TO YOU, AND YOU WERE FREE TO TAKE IT AND REVIEW IT.**

Buyer Signs X _____ Date 03/25/2024  Co-Buyer Signs X _____ N/A _____ Date N/A
Buyer Printed Name DOUGLAS A JOHNSON    Co-Buyer Printed Name N/A

If the "business or commercial" use box is checked in "Use for Which Purchased": Print Name N/A _____ Title N/A

**Co-Buyers and Other Owners** — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____ N/A _____ Date N/A _____ Address N/A
Seller signs HOVEY MOTORCARS _____ Date 03/25/2024  By X _____ Title FI MANAGER
THIS CONTRACT IS NOT VALID UNTIL YOU AND WE SIGN IT.

| Seller assigns its interest in this contract to SSFCU | (Assignee) under the terms of Seller's agreement(s) with Assignee. |
|---|---|
| ☐ Assigned with recourse | ☒ Assigned without recourse | ☐ Assigned with limited recourse |

Seller HOVEY MOTORCARS
By X _____    Title FI MANAGER

**ILAW** FORM NO. 553-TX-eps-14 4/21
©2021 The Reynolds and Reynolds Company
THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, AS TO CONTENT OR FITNESS FOR PURPOSE OF THIS FORM. CONSULT YOUR OWN LEGAL COUNSEL.

88963*1*HOV-FI

03/25/2024  03:24 pm

LAW 553-TX-eps-14 4/21 v1    Page 4 of 4

Married Applicants:   May apply for a separate account.

☑ Individual Credit:   You must complete the Applicant section about yourself and the other section about your spouse if:
1.  you live in a community property state (AK, AZ, CA, ID, LA, NM, NV, P.R., TX, WA, WI).
2.  your spouse will use the account, or
3.  you are relying on your spouse's income as a source of repayment.   If you are relying on income from alimony, child support, or separate maintenance, complete the Other section to the extent possible about the person on whose payments you are relying.

☐ Joint Credit – if you are applying for a joint account or an account that you and another person will use, you must complete the applicant and Spouse Co-Applicant section

_____  Initial here if you intend to apply for Joint Credit

Date: 03/18/2024 | Cell Phone:

| Seller HOVEY MOTORCARS | Stock/VIN: 3C6UR5DL4NG123805 | Requested Amount: 46640.89 |

## APPLICANT INFORMATION

Name: DOUGLAS A JOHNSON

| Birth date: | Driver's License: | Social Security No.: | Marital Status: |
|---|---|---|---|

| Current Address: | | | How Long: | h |

| Home Phone: | | Cell Phone: | 8 |

| Previous Address: | |

| Current Employer: | Employer Name: | | Position: | Employment Income: |
| | Work Phone: | | How long? | |

| Previous Employer: | Previous Employer Name: | | Position: | TRAINER |
| | Previous Employer Work Phone: | | Previous Employment Length: | nths |

| Reference #1: | Name: | | Relationship: |
| | Address: | | Home Phone: |
| Reference #2: | Name: | | Relationship: |
| | Address: | | Home Phone: |
| Other Income: | | per month | Other Income/Source: |

## SPOUSE OR CO-APPLICANT INFORMATION

Name:

| Birth date: | Driver's License: | Social Security No.: | Marital Status: |
|---|---|---|---|

| Current Address: | | | How Long: |

| Home Phone: | | Cell Phone: |

| Previous Address: | |

| Current Employer: | Employer Name: | RETIRED | Position: | Employment Income: 0.00   per month |
| | Work Phone: | | How long? | |

| Previous Employer: | Previous Employer Name: | | Position: | |
| | Previous Employer Work Phone: | | Previous Employment Length: | |
| Reference #1: | Name: | | | Relationship: |
| | Address: | . | | Home Phone: |
| Reference #2: | Name: | | | Relationship: |
| | Address: | . | | Home Phone: |
| Other Income: | | per month | Other Income Source: | |

The terms "I", "ME", and "MINE" in this Application mean each of those signing below. You promise that the information stated in this Consumer Loan Application is true and correct to the best of your knowledge. The Credit Union or its agent is authorized to investigate your credit worthiness, employment history, and to obtain a credit report and to answer questions about its credit history with you. The Credit Union may also obtain credit reports to update, increase, extend or renew credit with you. False or misleading statements in your application may cause any loan to be in default. You agree that this application shall be the Credit Union's property whether or not this application is approved. You will notify the Credit Union in writing immediately of any changes in your name, address or employment. You understand that it is a crime to willfully and deliberately provide incomplete or incorrect information to obtain credit. If you request, you will be provided the name and address of any credit bureau form which we received a credit report.

To help the government fight the funding of Terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license and other identifying information.

X _____  3/25/2024
      Applicant                          Date

X _____  _____
      Co-Applicant                       Date

## SSFCU ADDITIONAL TERMS OF RETAIL INSTALLMENT CONTRACT

Buyer(s): DOUGLAS A JOHNSON

Contract Date: 2/25/2024

Collateral: 2022 RAM TRUCK 2500

The Seller may assign the Retail Installment Contract ("Contract") secured by the above-referenced collateral to SECURITY SERVICE FEDERAL CREDIT UNION ("SSFCU") at P.O. BOX 691510, SAN ANTONIO, TEXAS 78269-1510. Once assigned, the Contract and these additional terms will be referred to herein as the "Loan". To contact SSFCU about this Loan, call (210) 476-4000 or (800) 52-SSFCU. If so assigned, you or your agent agree to the following additional terms and conditions:

**SECURITY:** In addition to our security interest in the automobile securing performance of the Loan, you agree that collateral securing your other loans with SSFCU will also secure performance of the Loan. Our security interest in the automobile securing performance of the Loan also secures the payment of all other amounts you owe to SSFCU and all other obligations you have to SSFCU whether now existing or which may exist in the future. Our security interests also secure any transfer, renewal, extension, modification or assignment of the Loan or other agreements and obligations you have with or to SSFCU. To the extent provided by law, if you breach your obligations to SSFCU, SSFCU has the right to pay all or part of the amounts owed under the Loan from any deposits or funds you have with SSFCU without informing you ahead of time.

**CROSS-SELL:** By agreeing to these terms and conditions, you are authorizing SSFCU to cross-sell additional products and services to you utilizing any consumer report obtained by the SSFCU involving this extension of credit to you.

**COLLECTION COSTS:** You agree to pay SSFCU's reasonable costs and expenses incurred, including attorneys' fees, as a result of your default in the performance of your obligation under the Loan.

**TCPA CONSENT:** By providing your telephone number to SSFCU in reference to a product or service, you agree that SSFCU, its agents, and assigns may call or text this telephone number to make non-telemarketing, informational calls to you about this product or service using an autodialer, pre-recorded voice, or artificial voice. In addition, by providing your telephone number to SSFCU, you agree that SSFCU, its agents, and assigns may call or text this telephone number to make non-telemarketing, informational calls to you using an autodialer, pre-recorded voice, or artificial voice about any SSFCU product or service you have now or in the future.

**MILITARY LENDING ACT:** Federal law provides important protections to members of the Armed Forces and their dependents relating to extensions of consumer credit. In general, the cost of consumer credit to a member of the Armed Forces and his or her dependent may not exceed an annual percentage rate of 36 percent. This rate must include, as applicable to the credit transaction or account: The costs associated with credit insurance premiums; fees for ancillary products sold in connection with the credit transaction; any application fee charged (other than certain application fees for specified credit transactions or accounts); and any participation fee charged (other than certain participation fees for a credit card account). In the event the Military Lending Act applies to an SSFCU product or service, then notwithstanding any other term or condition in such product or service, such product or service, insofar as it applies to the covered borrower, (1) shall not contain any arbitration provision, (2) shall only be subject to set-off or cross-collateralization as is allowed by law, and (3) all legal notices shall be provided in accordance with the law of the applicable jurisdiction. If you are a covered borrower under the Military Lending Act, you are entitled by law to an oral disclosure of your loan terms. If you would like to hear that disclosure, please call 1-866-452-6945.

**INSURANCE:** You must keep the collateral insured against loss and damage with a maximum deductible of $1,000.00. You must make the insurance policy payable to Security Service Federal Credit Union as Loss Payee. You must provide proof of insurance to Security Service Federal Credit Union at PO Box 691510 San Antonio, TX 78269. Ensure that this address is provided to your insurance provider.

**DISPUTE RESOLUTION:** Any controversy or claim arising out of or relating to the Loan shall be subject to binding arbitration and a class action waiver in accordance with SSFCU's account terms and conditions.

**DEFERRED PAYMENT NOTICE:** If you have chosen to finance your motor vehicle purchase with a Retail Installment Contract secured by the above-referenced collateral that includes a deferred first payment, then you are not required to make your first payment until the due date disclosed on that Retail Installment Contract. INTEREST CHARGES BEGIN TO ACCRUE ON THE DATE YOU SIGN THE RETAIL INSTALLMENT CONTRACT AT THE ANNUAL PERCENTAGE RATE DISCLOSED ON THE RETAIL INSTALLMENT CONTRACT.

**IMPORTANT INFORMATION ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT:** To help the government fight the funding of Terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license and other identifying information.

The invalidity or unenforceability of any provision of the terms and conditions of the Loan shall not affect the validity or enforceability of any other provisions. By signing below, you accept all the terms and conditions of the Loan.

Buyer's Signature: _____ Date: 3/25/2024

Co-Buyer's Signature: _____ Date: _____

March 2, 2022


EXHIBIT
C

**Hovey Motorcars**

30775 IH 10 W
Boerne TX 78006
Phone:    (210) 384-0084


dealertrack technologies⁻

**J.D. Power® Wholesale Value (Trade) Details**

Bookout Date: 3/18/2024 4:42:26 PM

Guide:   J.D. Power March 2024, Southwestern Edition.

### Vehicle Information

2022 RAM RAM 2500 CREW CAB BIGHORN/LONE STAR 4WD 6.7L I6 T-DIESEL

| | | |
|---|---|---|
| VIN: 3C6UR5DL4NG123805   Stock No:  N/A | Condition: Clean | $46,050 |

### Optional Equipment

| | |
|---|---|
| Bed Liner | $50 |
| Blind Spot Monitor | w/pkg |
| Fixed Running Boards | $50 |
| Heated Exterior Mirrors | w/pkg |
| Power Adjustable Mirrors | w/pkg |
| Rear Parking Sensors | $150 |
| Remote Engine Starter | $150 |
| Tow Technology Pkg. | $950 |
| Towing/Camper Pkg | w/pkg |
| Aluminum/Alloy Wheels | included |
| Fog Lights | included |
| Power Door Locks | included |
| Power Windows | included |
| Steering Wheel Mounted AudioControls | included |

| | |
|---|---|
| Wholesale Value with Options | $47,400 |
| Mileage Adjustment (43054 miles) | ($700) |
| J.D. Power ® Wholesale Value | $46,700 |

Printed On:    3/18/2024

Last Modified By:   N/A

Last Modified:    N/A

Copyright 2024 by J.D. Power. All Rights Reserved. Vehicle valuations are opinions and may vary from vehicle to vehicle. Actual valuations will vary based upon market conditions, specifications, vehicle condition or other particular circumstances pertinent to this particular vehicle or the transaction or the parties to the transaction. This pricing is intended for the use of the individual generating this pricing only and shall not be sold to another party J.D. Power and Dealertrack assume no responsibility for errors or omissions.



EXHIBIT
D

 **GAP ADDENDUM** 150GWTXQ01099709

This Guaranteed Asset Protection (GAP) Contract Addendum ("Contract") amends the Financial Agreement. This Contract is between the Buyer ("I", "You", "Your" or "Consumer") and the Seller, or, if assigned, with the Financial Institution.

| BUYER DOUGLAS JOHNSON | | | SELLER Hovey Motorcars | | SELLER NUMBER 21930-450 | |
|---|---|---|---|---|---|---|
| ADDRESS | | | ADDRESS 30775 Interstate 10 W | | | |
| CITY S | STATE | ZIP | CITY Boerne | STATE TX | ZIP 78006 | |
| CUSTOMER E-MAIL | | | CONTACT | | 210-384-0084 | |

| YEAR 2022 | MAKE RAM | MODEL 2500 BIG HORN/LONE STAR | VIN NUMBER 3C6UR5DL4NG123805 | APR 8.14 % | PRIMARY INSURANCE DEDUCTIBLE $ |
|---|---|---|---|---|---|
| FINANCIAL AGREEMENT DATE 03/25/2024 | | FINANCIAL AGREEMENT TERM 75 | FINANCIAL INSTITUTION SSFCU | | FINANCIAL AGREEMENT NUMBER |
| MSRP/NADA $ | | AMOUNT FINANCED $ $50,401.00 | ADDRESS PO BOX 691510 | | |
| VEHICLE PURCHASE PRICE $ $45,995.00 | | YOUR CHARGE FOR CONTRACT $ $695.00 | CITY SAN ANTONIO | STATE TX | ZIP 78269 |
| ☐NEW ☐USED | | CONTRACT TERM 75 Months | CONTACT | PHONE | |

SURCHARGE: (Check if Applicable) ☐ Commercial Use or Class 3 Truck

I hereby acknowledge that this Guaranteed Asset Protection (GAP) Contract is STRICTLY VOLUNTARY, IS NOT REQUIRED and NEITHER THE EXTENSION OF CREDIT, THE TERMS OF THE CREDIT, NOR THE TERMS OF THE RELATED MOTOR VEHICLE SALE MAY BE CONDITIONED UPON THE PURCHASE OF THE CONTRACT. Although I am not required to do so, I have elected to purchase this Contract for an additional charge, which is shown above. I acknowledge that the cost of the above described Contract has been disclosed to me and I agree to pay that amount. I understand that I may wish to consult an insurance agent to determine whether similar coverage may be obtained and at what cost. I understand that I may obtain a GAP contract from anyone I choose and that GAP benefits may decrease over the term of the Financial Agreement. This Contract includes a binding arbitration clause. This Contract may not waive the entire amount owing at the time of loss.

WARNING: THIS CONTRACT DOES NOT PROVIDE AND IS NOT A SUBSTITUTE FOR BODILY INJURY, PROPERTY DAMAGE, LIABILITY, COMPREHENSIVE OR COLLISION INSURANCE AND DOES NOT COMPLY WITH ANY FINANCIAL RESPONSIBILITY LAW OR ANY OTHER LAW MANDATING MOTOR VEHICLE INSURANCE COVERAGE. Please carefully read this Contract in its entirety for additional information on eligibility, conditions, limitations and exclusions that could prevent you from receiving benefits under this Contract. You are responsible for maintaining Primary Insurance on the Vehicle.

GAP AGREEMENT

The Buyer and the Seller named above hereby agree to amend the provisions of the Financial Agreement for the Vehicle referenced above as follows:
If the Vehicle is deemed a Total Loss, the Seller or, if assigned, Financial Institution agrees to waive the difference between:
(a) The Outstanding Balance of the Financial Agreement on the Date of Loss; and
(b) The Actual Cash Value of the Vehicle.
Up to $1,000.00 of the Buyer's physical damage insurance deductible, if applicable, is also waived under the Contract. The Buyer will always be responsible for (1) all Primary Insurance deductibles over $1,000.00 and (2) any amounts not covered under the terms and conditions of this Contract.

LIMITATIONS

The amount waived shall not exceed fifty thousand dollars ($50,000.00). No coverage is provided for that portion of a deficiency that results from an original Amount Financed that exceeds 150% of (1) MSRP for new vehicles or (2) the retail value found in the NADA Official Used Car Guide, or if not available an equivalent national or regional guide for used vehicles and will be deducted from the Outstanding Balance. This Contract is only available for purchase on the Financial Agreement Date when the Financial Agreement is originally executed and only provides coverage during the term of the Financial Agreement. This Contract does not provide coverage, and will automatically terminate if the Financial Agreement is refinanced. This Contract is not transferable to any other vehicle or Financial Agreement.

BY MY SIGNATURE BELOW, I ELECT TO PURCHASE THIS GAP ADDENDUM CONTRACT AND ACCEPT ITS TERMS, LIMITATIONS, AND CONDITIONS.

| BUYER(S) | | SELLER Hovey motorcars | |
|---|---|---|---|
| BUYER SIGNATURE | DATE 03/25/2024 | BY SELLER | DATE 3/25/24 |
| | DATE 03/25/2024 | | DATE 03/25/2024 |
| CO-BUYER SIGNATURE | DATE | TITLE Manager | |

Report Your Total Loss To The Program Administrator:
**FINANCIAL GAP ADMINISTRATOR LLC**
P.O. BOX 22439, ST. LOUIS, MO 63126-2439
Phone: (888) 427-2037 • Fax: (636) 349-3169 • Email: LossReport@GapAdmin.com

Original: Administrator    Yellow: Financial Institution    Pink: Seller    White: Buyer
Copyright © 2020 Financial Gap Administrator LLC. All rights reserved.

FG108

**Page 1 of 3**

07/20





## CANCELLATION

You may cancel this Contract at any time prior to the occurrence of a Total Loss by mailing or delivering written notice of cancellation request to the Seller/Financial Institution or Program Administrator. If this Contract is cancelled within thirty (30) days of the date of purchase, You will receive a full refund. If this Contract is cancelled after thirty (30) days from the date of this Contract, the refund will be calculated using the pro rata refund method, less a $50.00 cancellation fee. The Seller, or if assigned, Financial Institution will be named as payee on any refund of this Contract unless Program Administrator is provided with written documentation stating the Financial Agreement has been paid in full. This Contract will not be reinstated after a cancellation has been processed. If we cancel, we will calculate Your refund pro rata. Notice of cancellation will state the effective date of cancellation. The Contract period will end on that date. In the event that an amount is waived under this Contract following a Total Loss to the Vehicle, all fees paid for the Contract shall become fully earned and no refund will be made.

## LOSS DOCUMENT REQUIREMENTS

In the event of a Total Loss, it is Your responsibility to keep Your account current until any deficiency is determined and waived. If there is a Total Loss due to theft of the Vehicle, You must report the incident to law enforcement authorities within twenty-four (24) hours of the knowledge of the theft. You shall provide the following documentation to the Program Administrator at the address shown below. All copies must be complete and legible. This documentation must be submitted within ninety (90) days from the date of the Primary Insurance company settlement or, in the absence of Primary Insurance, ninety (90) days from the Date of Loss. Failure to do so will terminate this Contract.

    1. If applicable, a copy of the Primary Insurance company claim settlement check(s), settlement worksheet and Actual Cash Value evaluation.
    2. A copy of the police report.
    3. A copy of all contracts financed into the Financial Agreement, such as a service contract, credit insurance or other similar items and proof of proceeds recovered from the cancellation of any such refundable contracts.
    4. A copy of the Financial Agreement.
    5. Documentation from the Seller, or if assigned, Financial Institution detailing the complete payment history of the Financial Agreement including all the payments and transactions.
    6. A copy of the bill of sale, if provided to the Buyer.

You will not be required to provide any documents not listed above. You may direct all inquiries regarding this Contract to the Program Administrator shown below:

**Program Administrator: Financial Gap Administrator LLC, P.O. Box 22439, St. Louis, MO 63126-2439**
**Phone (888) 427-2037 • Fax (636) 349-3169 • Email: LossReport@GapAdmin.com**

## DEFINITIONS

As used in this Contract, the following terms shall have the meanings set forth below:

**Actual Cash Value**, at the Date of Loss means, (1) the Actual Cash Value established by the Primary Insurance company, (2) in the absence of Primary Insurance, the retail value of the Vehicle in the National Automobile Dealers Association (NADA) Official Used Car Guide. If the retail value is not available in the NADA Official Used Car Guide, then an equivalent guide will be used. In the absence of Primary Insurance the terms of this Contract will remain the same. Adjustments will be made for prior unrepaired damage, mileage, usage, condition, applicable taxes or fees, and documented Vehicle options and accessories purchased at the time the Financial Agreement was executed. If it is determined that Your Primary Insurance company did not pay a fair Actual Cash Value and we provide You with evidence obtained in our research, You may be required to contact Your Primary Insurance carrier and request a higher payment.

**Buyer**, as identified on page 1, means the purchaser.

**Class 3 Truck** means any van or light truck rated Class 3 (GVWR from 10,001 lbs to 14,000 lbs) or higher by the manufacturer according to Department of Transportation guidelines. A van or light truck rated Class 3 or higher is excluded from coverage unless the Class 3 Truck surcharge option has been selected and purchased.

**Commercial Use** means utilization of the Vehicle under limited conditions for light commercial purposes generally regarded as professional, including, but not limited to a Vehicle used by an individual driver for sales/services (e.g., real estate, cleaning services, home health services) or light duty contracting such as an electrician or plumber. A Vehicle registered as commercial or to a business shall be deemed commercial. A Vehicle utilized for Commercial Use is excluded from coverage unless the Commercial Use surcharge option has been selected and purchased. Ride-Sharing is not considered Commercial Use. Additional exclusions apply - see the EXCLUSIONS section for complete details.

**Contract** means this Addendum to the Financial Agreement.

**Date of Loss** means the date on which the Total Loss occurred.

**Delinquent Payment** means any amount as required by the original terms of the Financial Agreement that, as of the Date of Loss, has remained unpaid for more than fifteen (15) days after the due date stated in the Financial Agreement.

**Extensions of Maturity** means a payment that (1) has been postponed, skipped or waived by the Seller, or if assigned, Financial Institution; and (2) remains unpaid on the Date of Loss.

**Financial Agreement** means the retail installment sales contract document(s) evidencing Your purchase of the Vehicle with a period of not more than forty-five (45) days from the date of purchase to the first payment.

**Financial Institution** means the assignee or lienholder.

**MSRP** means Manufacturer's Suggested Retail Price.

**Outstanding Balance** means the amount in U.S. currency required to satisfy or payoff the Financial Agreement as of the Date of Loss. The Outstanding Balance shall be determined based only on the amounts included in the original Financial Agreement. Amounts added subsequent to the purchase of the Vehicle, such as but not limited to collateral protection insurance, unearned finance charge, taxes, Delinquent Payments, late charges, Extensions of Maturity, salvage, repo expense, towing and storage are not included. The Outstanding Balance shall be reduced by any proceeds that could be recovered from the cancelling of any items, such as a service contract, credit insurance, or other similar items, that were included in the Financial Agreement. In the absence of Primary Insurance, the Outstanding Balance shall be reduced by any costs incurred in obtaining appraisal or value of the Vehicle. The Outstanding Balance, at the Date of Loss, shall be determined by the Financial Agreement original payment schedule. If additional collateral is secured under the Financial Agreement, the described Vehicle shall bear a proportionate share of the total Outstanding Balance (in proportion to the original Financial Agreement amount financed).

**Primary Insurance** means comprehensive and collision insurance coverage as required under the terms and conditions of the Financial Agreement or any third party insurance responsible for damage to the covered Vehicle.

**Ride-Sharing** means a utilization of the Vehicle in connection with a Transportation Network Company. Ride-Sharing is not considered Commercial Use.

**Seller** means the entity from which You purchased this GAP Contract.

**Territory** means the United States of America, its territories or possessions, and Canada.

**Total Loss** means that the Vehicle is deemed a Total Loss by the Primary Insurance company due to an insured peril. In the absence of Primary Insurance, the covered Vehicle must be available with reasonable advance notice for the Program Administrator's inspection or appraisal to determine if the covered Vehicle is a constructive Total Loss with repairs greater than the Actual Cash Value of the Vehicle immediately prior to the Date of Loss. If the covered Vehicle is not available for inspection or appraisal, no deficiency benefit will be waived, except in the case of theft.

**Transportation Network Company** means a company that uses an online-enabled application or digital network to connect passengers with drivers using their personal vehicles for the purpose of providing prearranged transportation services for compensation. Examples of a Transportation Network Company include but are not limited to: Uber, Lyft, and Sidecar.

**Vehicle** means the motor vehicle described on Page 1 of this Contract. The Vehicle must be garaged and used only in the Territory.

**You, Your, Buyer, Consumer** means the purchaser.

## CONTRACT EXPIRATION

This Contract expires upon the earliest of (1) the original termination date of the Financial Agreement, (2) the early termination of the Financial Agreement, (3) occurrence of a Total Loss, after an amount has been waived, (4) date of repossession of the Vehicle, (5) eighty-four (84) months after the date of this Contract, or (6) any term limitation as set forth in the Vehicle Type And Program Eligibility section hereof. The maximum term of this Contract for which a deficiency may be waived will not exceed eighty-four (84) months. This Contract is not renewable. You will receive a refund, without written notice of cancellation, based on the earliest of: (1) prepayment of the Financial Agreement in full, (2) a demand by the Seller, or if assigned, Financial Institution for payment in full or acceleration, or (3) total denial of a request for a waiver.

## ASSIGNMENT

The Seller, or if assigned, Financial Institution shall have the right to assign its right(s), title, and interests in this Contract at any time. Assignment of the Financial Agreement by the Seller, or if assigned, Financial Institution shall not in any way affect the terms and conditions of this Contract.

## VEHICLE TYPE AND PROGRAM ELIGIBILITY

You are not eligible for this Contract if You do not own the Vehicle. Coverage extends only to the Vehicle and Vehicle accessories included in the original Financial Agreement. Trailers and special commercial usage optional equipment, accessories and body components are not covered. In addition, the following limitations, exclusions, and eligibility requirements apply:

MOTOR VEHICLE - AUTOMOBILE, VAN, or LIGHT TRUCK: Includes a Vehicle utilized for personal use, Ride-Sharing and/or Commercial Use or Class 3 Truck (with payment of the applicable Surcharge) that are less than 15,000 pounds gross vehicle weight (GVWR). The maximum term of the Financial Agreement shall be for no more than eighty-four (84) months. If loss is excluded for any of these reasons, this Contract is void and You will receive a full refund of the cost of this Contract. If loss is excluded due to any other condition known at the time of sale, You will receive a full refund of the cost of this Contract.

## EXCLUSIONS

No deficiency benefit will be waived under this Contract respecting a Total Loss.
   (1) occurring prior to its effective date;
   (2) occurring after the original maturity date or date of Your acceleration of the Financial Agreement;
   (3) resulting from an intentional act, forgery or any criminal or dishonest, fraudulent, illegal, intentional, willful, reckless, gross negligent or wanton act committed by any authorized driver whether acting alone or in collusion with others;
   (4) on any Vehicle customized subsequent to purchase;
   (5) resulting from the Vehicle being operated or utilized for daily rental, livery, carrying passengers for hire (taxi, limo, shuttle services), towing or road service operations, government/military use, law enforcement, emergency services, or snowplowing;
   (6) due to lawful confiscation, forfeiture, seizure, or destruction of the Vehicle by any governmental authority or public official;
   (7) if the Primary Insurance company settlement is equal to or greater than the Outstanding Balance;
   (8) resulting from any civil commotion, disturbance, riot, or action taken by any governmental authority in dealing with such;
   (9) resulting from the Vehicle being operated, used, or maintained in any race, speed, or other contest;
   (10) resulting from war, whether or not declared, invasion, insurrection, rebellion, revolution or an act of terrorism;
   (11) due to damage that occurred after the Vehicle has been repossessed;
   (12) as a result of damage related to any personal property attached to or within the Vehicle;
   (13) involving damages associated with falsification of documents by any person not associated with the Seller or other person canceling Your obligation;
   (14) involving any unpaid debt resulting from exclusions in Your Primary Insurance coverage not included in this Contract;
   (15) in the case of abandonment of the Vehicle by You if You voluntarily discard, leave behind, or otherwise relinquish possession of the Vehicle to the extent that relinquishment shows intent to forsake and desert the Vehicle so that it may be appropriated by another person;
   (16) that occurs outside of the Territory;
   (17) resulting from nuclear reaction or radiation or radioactive contamination;
   (18) caused by or resulting from normal wear and tear, gradual deterioration, obsolescence, rust, corrosion, latent defect, inherent defect, freezing, overheating, or resulting from any repairing, restoration, or remodeling process, mechanical, or electrical breakdown or failure unless fire or other accident ensues and then only for the physical loss or damage by such ensuing fire or accident;
   (19) for any Vehicle held as collateral for any purpose other than purchase of the covered Vehicle;
   (20) if the Vehicle has either a rebuilt, salvage, branded or junk title or has been previously declared a Total Loss;
   (21) if the Vehicle is a Class 3 Truck or was being operated or utilized for Commercial Use unless the Commercial Use or Class 3 Truck surcharge option has been selected and purchased; or,
   (22) for any loss other than a Total Loss. NOTE: In addition, there shall be no coverage for any benefits under this Contract unless there is a deficiency waived.

## ARBITRATION

It is understood and agreed that the transaction evidenced by this Contract takes place in and substantially affects interstate commerce. Any controversy or dispute arising out of or relating in any way to this Contract or the sale of this Contract, including for recovery of any claim under this Contract including the applicability of this arbitration clause and the validity of this Contract shall be resolved by neutral binding arbitration on an individual basis without resort to any form of class action or any other collective or representative proceeding by the American Arbitration Association (AAA), under the Commercial Arbitration Rules in effect at the time the claim is filed. All preliminary issues of arbitration will be decided by the arbitrator.
   1.) The arbitration shall take place in the county of residence of the Buyer unless another location is mutually agreed upon by the parties. The arbitration shall take place before a single arbitrator selected in accordance with the AAA Commercial Arbitration Rules. AAA rules and forms may be obtained and all claims shall be filed at www.adr.org or at any AAA office.
   2.) The cost of the arbitration shall be borne by the Seller except that each party must bear the cost of filing and the cost of its own attorneys, experts and witness fees and expenses. You may seek a waiver of the filing fee under the applicable AAA rules. If the arbitrator holds that a party has raised a dispute without substantial justification, the arbitrator shall have the authority to order that the cost of the arbitration proceedings be borne by that party.
   3.) It is understood and agreed that the arbitration shall be binding upon the parties, that the parties are waiving their right to seek remedies in court, including the right to a jury trial. You will not be able to participate as a representative or member of any class of claimants. An arbitration award may not be set aside in later litigation except upon the limited circumstances set forth in the Federal Arbitration Act. An award in arbitration will be enforceable under the Federal Arbitration Act by any court having jurisdiction.
   4.) All statutes of limitations that would otherwise be applicable shall apply to any arbitration proceedings.
If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions of this arbitration provision shall nevertheless remain valid and in force. In the event of a conflict or inconsistency between this arbitration provision and the other provisions of this Contract or any prior agreement, this arbitration provision shall govern.

## FRAUD AND MISREPRESENTATION

This Contract is issued in reliance upon the truth of all representations made by You. This Contract shall be terminated where you: 1. Intentionally concealed or misrepresented any material fact; 2. Engaged in fraudulent conduct; or 3. Made a materially false statement relating to submitting a claim. If You have concealed or misrepresented any material fact(s) concerning this coverage, or in case of fraud, attempted fraud, or the false swearing by affecting any matter relating to this coverage, whether before or after Total Loss, this Contract may be terminated and all charges will be returned, less a $50.00 processing fee.

## IMPORTANT NOTICE

A complaint regarding this Contract may be submitted to the Office of Consumer Credit Commissioner (OCCC), a state agency.
OCCC address: 2601 North Lamar Boulevard, Austin, TX 78705. Phone: 800-538-1579. Website: occc.texas.gov.

HOVEY MOTORCARS
30775 IH 10 WEST
BOERNE TX 78006
210-384-0084

DEAL# 3368
CUST# 13278

## INSURANCE COVERAGE ACKNOWLEDGEMENT

Customer Name(s): DOUGLAS A JOHNSON                                    Date: 03/25/2024

Street Address:

Telephone (1):                              Telephone (2): N/A

Driver's License #:                    Issuing State: TX    Expiration Date:

Vehicle: 22          RAMT          2500          3C6UR5DL4NG123805
    Year          Make          Model          Vehicle Identification Number (VIN)

I understand that the Retail Installment Sales Contract/Finance Contract/Lease Contract ("Contract") that I signed in connection with my purchase/lease of the above-described vehicle requires me to obtain and maintain insurance on the vehicle against the risks of loss or damage. I understand that this insurance must be in an amount equal to the lesser of the unpaid amount due under the Contract or the value of the vehicle and must be maintained for the entire term of the Contract. I also understand that the Lender/Lessor/Assignee of the Contract must be named as the loss payee and that the failure to maintain said insurance coverage may be an event of a default under the Contract. In the event of a default, the Lender/Lessor/Assignee of the Contract may pursue all of the remedies provided by law and in the Contract as it deems appropriate. Having been advised that I may obtain insurance coverage from a company and agent of my choice, I have selected:

Insurance Company:                                    Policy #:

Agent's Name: N/A                                    Telephone: N/A

Address:

Insurance Coverage: [X] Collision $ 200.00 Deductible [X] Comprehensive $ 200.00 Deductible

Policy Effective From: 03/05/2024 To: 09/05/2025 Named Loss Payee: SSFCU

    Address: PO BOX 691510 SAN ANTONIO TX 782691510

By signing below, I acknowledge and agree that: (1) I have read this Insurance Coverage Acknowledgment; (2) it is my obligation to obtain and maintain insurance coverage for the vehicle; (3) I have given the Dealership permission to contact my Insurance Company to verify that I have insurance coverage; (4) I must verify that a Policy covering the vehicle has been issued and pay any premiums for the insurance coverage; and (5) I will provide a copy of the Policy, Declaration Page, or other proof of insurance to the Dealership and/or Lender/Lessor/Assignee of the Contract upon request.

_____ 03/25/2024      _____ 03/25/2024
Customer                     Date          Authorized Dealership Representative   Date

N/A
_____                    _____
Customer                     Date
                      93794*1*HOV-FI

DealerCAP                    CATALOG #8963022          © 2021 CDK Global, LLC  (09/21)





**HOVEY** MOTORCARS
30775 IH 10 West
Boerne, TX 78006
210-384-0084

Customer No: 13278

## RETAIL PURCHASE AGREEMENT

Deal Number: 3368

Purchaser's Name(s): **DOUGLAS A JOHNSON**

Date: 03/25/2024

Address:

County: **BEXAR**

Telephone (1): (515)770-6628  Telephone (2): N/A

DOB:

E-mail: N/A  D.L./State I.D.#:

Issuing State: TX  Exp. Date:

The above information has been requested so that we may verify your identity. By signing below, you represent that you are at least 18 years of age and have authority to enter into this Agreement. The Odometer Reading for the Vehicle you are purchasing is accurate unless indicated otherwise. Please refer to the Odometer Mileage Statement for full disclosure.

| YEAR 22 | MAKE RAMT | MODEL 2500 | COLOR | STOCK NO. |
|---|---|---|---|---|

| VIN/SERIAL NO. 3C6UR5DL4NG123805 | ODOMETER READING ☐ Not Accurate 43054 | SALESPERSON |
|---|---|---|

| THE VEHICLE IS: ☐ NEW ☒ USED | PRIOR USE DISCLOSURE: ☐ DEMONSTRATOR ☐ FACTORY OFFICIAL/EXECUTIVE ☐ RENTAL ☐ OTHER N/A |
|---|---|

| WARRANTY STATEMENT | | |
|---|---|---|
| We are selling this Vehicle to you AS-IS and we expressly disclaim all warranties, express and implied, including any implied warranties of merchantability and fitness for a particular purpose, unless the box beside "USED VEHICLE LIMITED WARRANTY APPLIES" is marked below or we enter into a service contract with you at the time of, or within 90 days of, the date of this transaction. All warranties, if any, by a manufacturer or supplier other than our Dealership are theirs, not ours, and only such manufacturer or supplier shall be liable for performance under such warranties. We neither assume nor authorize any other person to assume for us any liability in connection with the sale of the Vehicle and related goods and services. | CASH PRICE OF VEHICLE | 45995.00 |
| | OPTIONAL ACCESSORIES: ☐ See attached Addendum Sticker | N/A |
| | N/A | N/A |
| | N/A | N/A |
| | N/A | N/A |
| **CONTRACTUAL DISCLOSURE STATEMENT** (USED VEHICLES ONLY) The information you see on the window form for this Vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. Traducción española: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta. | WISE FI GAP | 695.00 |
| | TOTAL SELLING PRICE | 46690.00 |
| | LESS - TRADE-IN ALLOWANCE | N/A |
| | ENDURANCE DEALER SERV | 3101.00 |
| | SUBTOTAL | 49791.00 |
| ☐ Used Vehicle Limited Warranty Applies. We are providing a Used Vehicle Limited Warranty in connection with this transaction. Any implied warranties apply for the duration of the Limited Warranty. | N/A | N/A |
| TRADE-IN VEHICLE INFORMATION | SALES TAX | 2874.69 |

| Year: N/A | Make: N/A | Model: N/A | Color: N/A | DEALER'S INVENTORY TAX | 71.20 |
|---|---|---|---|---|---|
| VIN/Serial No: N/A | | Odometer Reading: ☐ Not Accurate N/A | | PROCESSING & HANDLING 4.75 CHILD SAFETY 1.00 | 5.75 |
| Trade-In Allowance: N/A | | Balance Owed & Lienholder: N/A | | DOCUMENTARY FEE * | 150.00 |

| OTHER MATERIAL UNDERSTANDINGS AND INTEGRATED DOCUMENTS | STATE INSPECTION FEE | 7.50 |
|---|---|---|
| ☐ PLEASE SEE THE DELIVERY CONFIRMATION | STATE INSPECTION FEE DEALER | 7.00 |
| ☐ PLEASE SEE THE CONDITIONAL DELIVERY AGREEMENT | LICENSE FEE | 50.75 |
| | TITLE FEE | 28.00 |
| | BUYERS TAG 5.00 REG FEE - DPS 1.00 | 6.00 |
| **Dealer's Inventory Tax:** The Dealer's Inventory Tax charge is intended to reimburse the Dealer for ad valorem taxes on its motor vehicle inventory. The charge, which is paid by the Dealer to the county tax assessor-collector, is not a tax imposed on a consumer by the government, and is not required to be charged by the Dealer to the consumer. | ROAD & BRIDGE FEE | 10.00 |
| | TOTAL DUE | 53001.89 |
| | ☐ DEPOSIT/☐ DOWN PAYMENT If Deposit, see Deposit Receipt | N/A |
| **\*Documentary Fee:** A documentary fee is not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents relating to the sale. A documentary fee may not exceed a reasonable amount agreed to by the parties. This notice is required by law. Traducción española: Vea Párrafo 13. | N/A | N/A |
| | N/A | N/A |
| | LESS CASH DUE AT DELIVERY | 2600.00 |
| | AMOUNT TO BE FINANCED (See Paragraphs 12 and 16) | 50401.89 |

This Agreement and any documents which are part of this transaction or incorporated herein comprise the entire agreement affecting this Retail Purchase Agreement and no other agreement or understanding of any nature concerning the same has been made or entered into, or will be recognized. I have read all of the terms and conditions of this Agreement, including the Agreement to Arbitrate, and agree to them as if they were printed above my signature. I further acknowledge receipt of a copy of this Agreement. This Agreement shall not become binding until signed and accepted by an Authorized Dealership Representative.

Purchaser _(signature)_

N/A
Purchaser

Accepted by Authorized Dealership Representative

DealerCAR

CATALOG #5964251_B

82846*1*HOV-FI
Page 1 of 3
© 2015 CDK Global, LLC  Texas (04/19)



EXHIBIT
G

**AGREEMENT TO ARBITRATE:** Purchaser and Dealership agree, except as otherwise provided in the Agreement to Arbitrate, to resolve by binding arbitration any dispute between them. **THE PARTIES UNDERSTAND THAT EXCEPT FOR THOSE DISPUTES SPECIFICALLY EXEMPTED FROM ARBITRATION, THEY ARE KNOWINGLY AND UNCONDITIONALLY WAIVING THEIR RIGHT TO LITIGATE ANY CLAIMS IN COURT, THEIR RIGHT TO A JURY TRIAL, AND THEIR RIGHT TO PARTICIPATE AS A MEMBER OR REPRESENTATIVE IN ANY CLASS ACTION IN COURT OR THROUGH ARBITRATION.** By signing below, I acknowledge I have read the Agreement to Arbitrate in Paragraph 17 and agree to be bound by the terms and conditions of the Agreement to Arbitrate.

Purchaser's Signature: _____    Purchaser's Signature: _____N/A_____

## ADDITIONAL AGREEMENTS BETWEEN THE DEALERSHIP AND PURCHASER(S)

1. **Terms Used In This Agreement:** This Retail Purchase Agreement contains the following words and phrases that appear throughout this Agreement and have particular meanings:
   - **Agreement** - Means all of the pages of this Retail Purchase Agreement together with any documents incorporated into this Agreement by reference, whether such reference is made in this Agreement or in the document itself.
   - **You, Your** - Means the Purchaser(s) identified in this Agreement.
   - **We, Us, Our** - Means the Dealership that is identified in this Agreement and its Authorized Representatives.
   - **Manufacturer** - Means the company that manufactured the Vehicle.
   - **Vehicle** - Means the Vehicle that you are purchasing from us as described in this Agreement.
   - **Trade-In Vehicle** - Means the vehicle you are delivering to us as part of this transaction as identified in this Agreement.

2. **Our Right to Increase the Price:** We may increase the price of the Vehicle after we accept this Agreement if the Trade-In Vehicle is reappraised, new equipment is required by state or federal law, or the increase is caused by state or federal tax rate changes. If the price is increased, you may cancel this Agreement with full refund of any Deposit/Down Payment, provided that the cancellation occurs prior to you taking delivery of the purchased Vehicle.

3. **Manufacturer's Design Changes:** In the event the Manufacturer changes or modifies the design of or any part or accessory of the Vehicle after your order for the Vehicle has been entered by us, you will not have any claim or right against us if the Vehicle does not contain such changes or modifications, nor shall we be required to effect such changes or modifications to the Vehicle.

4. **Your Representations and Warranties:** You represent, warrant and affirm to us that (a) You **are not purchasing a New Vehicle for resale or export** within the period beginning on the date the Vehicle title is issued to you and ending on the date one (1) year thereafter. You confirm that we are relying on this representation and agree that we would not sell the Vehicle to you without this representation. If we are required by the Manufacturer to forfeit or repay any manufacturer incentives, allowance and/or special pricing, or if we suffer any loss or harm as a result of your breach of this provision, you agree to indemnify and hold us harmless from any such cost, loss or harm suffered as a result of or arising because of your breach; (b) the Deposit/Down Payment and any amounts due to us have been paid in full, any check given to us will be honored by your Bank, and that no part of the Deposit/ Down Payment has been loaned to you by us or any third party; (c) all statements made by you in this Agreement and any other documents completed in connection with this transaction are true and correct; and (d) you are who you have represented yourself to be and you have purchased the Vehicle for your own use and not on behalf of another person, unless you have disclosed otherwise to us.

5. **Your Representations Regarding the Trade-In Vehicle:** Any Trade-In Vehicle delivered by you to us in connection with this transaction shall be accompanied by a Certificate of Title or documents sufficient to enable us to obtain a Certificate of Title to the Trade-In Vehicle in accordance with applicable state law. You warrant that the Trade-In Vehicle delivered to us is properly titled to you, has never been titled as or declared a total loss, salvage, junk, reconstructed, rebuilt, flood, lemon buyback vehicle, or any other title brand; that you have the right to sell or otherwise convey such Trade-In Vehicle; that such Trade-In Vehicle is free and clear of liens or encumbrances, except as may be noted in this Agreement; that all emission control equipment is on the Trade-In Vehicle and appears properly connected and undamaged; that you have accurately disclosed any information known to you regarding prior use of the vehicle, prior damage, paint work, modifications and any mechanical defects; and, unless you have told us otherwise, that you have not removed equipment from the Trade-In Vehicle subsequent to our appraisal, that the odometer reading shown is accurate, and all airbags in the vehicle are original equipment and have never been deployed or disconnected.

6. **Trade-In Vehicle Payoff:** If you are delivering a Trade-In Vehicle in connection with this transaction and the actual amount of the Balance Owed on the Trade-In Vehicle is greater than the amount of the Balance Owed as listed in this Agreement, you agree to pay the difference to us. If the actual amount of the Balance Owed is less than the amount listed, we will pay or credit the difference to you.

7. **Our Appraisal of Your Trade-In Vehicle:** If you are delivering a Trade-In Vehicle to us in connection with this transaction and the delivery will not be made until delivery of the Vehicle being purchased from us, we shall have the right to reappraise your Trade-In Vehicle at the time of delivery. The reappraised amount shall be the amount allowed for the Trade-In Vehicle in this transaction. If you are dissatisfied with the reappraisal, you may cancel this Agreement with full refund of any Deposit/Down Payment, provided that the cancellation occurs prior to you taking delivery of the purchased Vehicle.

8. **Remedies Upon Cancellation:** You agree that we are not liable for any damages resulting from our failure to deliver the Vehicle if the failure is caused by the manufacturer, an accident, fire, act of nature or any other causes beyond our control. This Agreement may be renegotiated or canceled (with full refund of any Deposit/Down Payment) if the Vehicle is not delivered to you on the date specified or pursuant to Paragraphs 2 or 7. If you have delivered a Trade-In Vehicle to us, the Trade-In Vehicle will be returned to you if we have not already sold it. If we have already sold the Trade-In Vehicle, we will refund the agreed upon Trade-In Allowance. Regardless of whether we return the Trade-In Vehicle or have already sold it, you shall be responsible for paying to us the Balance Owed on the Trade-In Vehicle if we have paid the Balance Owed to the Lienholder. We may keep any portion of the amount you have paid to us as a Deposit/ Down Payment and any Trade-In Allowance we owe to you to offset against the amount you owe us. If the actual amount you owe to us is greater than the amount of the Deposit/Down Payment, you agree to pay the difference to us. If the actual amount you owe is less than the amount of the Deposit/Down Payment, we will pay the difference to you. You are responsible for paying the cost of repairing any damage and any other losses, liabilities, damages, claims, costs and expenses arising out of your use, possession and control of the Vehicle.

9. **Purchaser's Default and Dealership's Remedies:** In the event you have agreed to pay the Amount to be Financed in cash or financing is being obtained by you through a credit source of your choice and we do not receive the Amount to be Financed from you at the time of delivery of the Vehicle or on the date promised in this Agreement, you fail to perform any of your other obligations under this Agreement, or you breach any representation or warranty made by you to us, we shall be permitted, at our sole discretion, to the choice of remedies in this Agreement, which may be used separately or together, including: (1) cancel this Retail Purchase Agreement; (2) repossess the Vehicle without notice (if permitted by law); (3) rescind the sales transaction; (4) seek collection for amounts due; (5) retain any cash down payment made by you; and/or (6) in the event that you have delivered a Trade-In Vehicle as part of the consideration for your purchase of the Vehicle from us, to sell such Trade-In Vehicle and reimburse the Dealership out of the proceeds of such sale for any reasonable expenses incurred in connection with preparing and offering the Trade-In Vehicle for sale and any actual damages suffered by us as a result of your default. Regardless of whether we return the Trade-In Vehicle or have already sold it, you shall be responsible for paying to us the Balance Owed on the Trade-In Vehicle if we have paid the Balance Owed to the Lienholder and for any reasonable expenses incurred by us in connection with preparing or reconditioning the Trade-In Vehicle for sale. Any remedies in this Paragraph 9 shall be in addition to, and not in lieu of, any other remedies available under the Retail Purchase Agreement or at law or equity. Any waiver of all or part of a remedy hereunder is not a continuing waiver. If the actual amount you owe to us is greater than the amount of the down payment and/or proceeds from the sale of your Trade-In Vehicle, you agree to pay the difference to us upon demand and if the actual amount you owe is less, then we will pay the difference to you.

10. **Security Agreement:** Purchaser hereby grants the Dealership, its successors and assigns, a security interest in the Vehicle, equipment and accessories to be purchased pursuant to this Agreement, and such security interest shall remain in effect until all sums due hereunder have been paid in full.

11. **Other Products and Services:** The Dealership offers its customers goods and services from various suppliers. The amounts charged to customers for such goods or services may be greater than the Dealership's cost, and/or the Dealership may receive a commission or other payment in connection with such

Page 2 of 3
Initial
© 2015 CDK Global, LLC   Texas (04/19)

DealerCAP

82846*1*HOV-FI
CATALOG #8964251_B

sale. You are not required to purchase any other goods or services from us, nor are you required to finance the Amount to be Financed under this Agreement with a particular lending source. In the event this Agreement includes a charge for other goods or services for which you must complete an application for coverage, and for any reason such coverage cannot be provided, you will receive a credit for the amount charged. If the cost of other goods or services was included in the amount to be financed in connection with this transaction, then this credit will be applied to the outstanding balance you owe to the Lender.

12. **Dealer Assisted Financing:** If we assist you to obtain financing for this transaction, the Annual Percentage Rate may be negotiated with us and we may receive a fee, commission or other compensation from the Lender. We <u>do not</u> make any representations or warranties regarding whether you obtained the best rate or could have obtained a better rate from us or a third party.

13. **Documentary Fee: A documentary fee is not an official fee. A documentary fee is not required by law, but may be charged to buyers for handling documents relating to the sale. A documentary fee may not exceed a reasonable amount agreed to by the parties. This notice is required by law. SPANISH TRANSLATION: Un honorario de documentación no es un honorario oficial. Un honorario de documentación no es requerido por la ley, pero puede ser cargada al comprador como gastos de manejo de documentos relacionados con una venta. Un honorario de documentación no puede exceder una cantidad razonable acordada por las partes. Esta notificación es requerida por la ley.**

14. **GOVERNING LAW:** THE TERMS AND CONDITIONS OF THIS AGREEMENT (INCLUDING ANY DOCUMENTS WHICH ARE A PART OF THIS TRANSACTION OR INCORPORATED HEREIN BY REFERENCE) AND ANY SALE HEREUNDER WILL BE GOVERNED BY THE LAWS OF THE STATE OF TEXAS.

15. **LIMIT ON DAMAGES:** TO THE EXTENT PERMITTED BY TEXAS LAW, PURCHASER EXPRESSLY WAIVES AND SHALL NOT BE ENTITLED TO RECOVER FROM THE DEALERSHIP ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

16. **CONDITIONAL DELIVERY AGREEMENT/LIMITED RIGHT TO CANCEL:** You may secure financing for this transaction through us or a financial institution of your choice. If you have elected to secure financing though us, the provisions of the Conditional Delivery Agreement/Limited Right to Cancel will apply. We may cancel this Agreement if: (1) you provide false or incomplete information regarding your creditworthiness; (2) your credit application is not approved by a financing source; or (3) your purchase is subject to the Conditional Delivery Agreement/Limited Right to Cancel and the Retail Installment Sale Contract is not accepted or approved by a financing source on terms acceptable to us.

---

17. **AGREEMENT TO ARBITRATE. Important – The Agreement to Arbitrate Affects Your Legal Rights.** By entering into this Agreement to Arbitrate, Purchaser(s) and Dealership, including any employees, agents, successors or assigns (collectively referred to as "the Parties") agree, except as otherwise provided in this Agreement to Arbitrate, to settle by binding arbitration any dispute whether based in whole or in part on contract, tort, statute, or other equitable relief, including but not limited to any dispute related to (1) the purchase or condition of the Vehicle; (2) any products and services purchased in conjunction with the Vehicle and any resulting transaction or relationship; (3) the application for and the terms of any financing obtained in connection with the transaction; (4) any other dispute between them related to the purchase transaction and any documents that are part of the transaction; and/or (5) any alleged promises, representations and/or warranties made to or relied upon by the Parties, and any alleged unfair, deceptive, or unconscionable acts or practices. If federal law provides that a claim or dispute is not subject to binding arbitration, this Agreement to Arbitrate shall not apply to such claim or dispute.

Notwithstanding any other provisions in this Agreement to Arbitrate, neither party is precluded from filing a complaint with the Office of Attorney General of this state or from participating in a mediation program administered by the Attorney General or Better Business Bureau. The Parties also agree that they retain any right to self-help or provisional remedies available by law or pursuant to an agreement between them. The Parties also retain the right to seek remedies in a small claims court or equivalent state court for disputes or claims within that court's jurisdiction. Neither Party waives the right to request arbitration under this Agreement to Arbitrate by exercising such other rights and remedies or by initially agreeing to litigate a claim in court. If such claim or dispute is transferred, removed or appealed to a different court or if a new claim is asserted after the initial filing of such claim or dispute, the Parties shall have the right to request arbitration under this Agreement to Arbitrate. However, once one of the Parties has demanded arbitration, binding arbitration will be the exclusive method for resolving any and all claims.

The Federal Arbitration Act (9 U.S.C. §1 et seq.) ("FAA") shall govern any arbitration under this Agreement to Arbitrate. Any dispute between the Parties shall be arbitrated by a single arbitrator on an individual basis, <u>not</u> as a class action. The arbitration shall be conducted by and in accordance with the rules of the **American Arbitration Association** ("AAA") (1-800-778-7879), 120 Broadway, 21st Floor, New York, New York 10271 (www.adr.org). "Consumer" claims shall be arbitrated in accordance with the American Arbitration Association's consumer arbitration rules and fee schedule. A copy of the Arbitration Rules may be obtained by visiting the website indicated or by contacting the organization directly. The Rules in effect at the time the request for arbitration is made will govern. If the AAA will not accept the request to arbitrate, the Parties may agree upon another organization, or the arbitrator shall be selected pursuant to the FAA and conduct the arbitration in accordance with the AAA Rules and this Agreement to Arbitrate.

To initiate an arbitration proceeding, the demanding Party must provide the other Party a demand for arbitration that includes a statement of the basis for the dispute, the names and addresses of the Parties involved, and the amount of monetary damages involved and/or any other remedy sought. If an organization other than the AAA will conduct the arbitration of consumer claims (as defined by AAA Consumer Arbitration Rules), the Dealership will advance the Consumer's portion of the filing, administration, service, or case management fee and the hearing or arbitrator fee which exceeds the amount of the AAA Consumer Filing Fee up to a maximum of $2500 upon request. The amount that the Dealership advances may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law.

The arbitrator shall be an attorney or retired judge and shall be selected in accordance with the applicable Arbitration Rules. The arbitration hearing shall be held in the federal district where the Dealership is located and the transaction occurred. Any court having jurisdiction may enforce this Agreement to Arbitrate and enter judgment on the arbitrator's award. If it is inconvenient for either Party to participate in arbitration proceedings in the district where the Dealership is located, the proceedings shall be held at a mutually convenient location agreed upon by the Parties or as determined by the arbitrator.

The arbitrator shall apply and be bound by governing state and federal law when making the decision and award and shall only award those damages or other relief permitted by applicable law. The Parties shall be provided a written decision setting forth the findings of fact and/or conclusions of law. The arbitration proceedings and the decision of the arbitrator shall be open to the public. **Nothing in this Agreement to Arbitrate shall be interpreted as limiting or precluding the arbitrator from awarding monetary damages or any other relief provided for by law. The Parties agree that by entering into this Agreement to Arbitrate, they are expressly waiving their right to a jury trial and their right to bring or participate in any class action or multi-plaintiff action in court or through arbitration.** The decision of the arbitrator shall be final and binding, except for any right of appeal provided by the FAA and the Arbitration Rules that governed the original arbitration proceedings. The appealing party shall be responsible for the filing fee and other arbitration appeal costs, subject to a final determination by the arbitrator of a fair apportionment of costs.

If any part of this Agreement to Arbitrate, other than waivers of class action rights, shall be declared unenforceable for any reason, the remainder of the Agreement to Arbitrate shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been asserted, then the remainder of this Agreement to Arbitrate shall be unenforceable. This Agreement to Arbitrate shall survive (1) any termination, payoff, assignment, transfer or cancellation of this Retail Purchase Agreement and/or the Retail Installment Sale Contract/ Finance Contract; (2) any repossession of the Vehicle and any legal proceeding to collect a debt owed by the other party; and (3) any bankruptcy proceeding. To the extent permitted by law, this Agreement to Arbitrate is incorporated by reference into the Retail Installment Sale Contract/Finance Contract. If the Retail Installment Sale Contract/Finance Contract contains an arbitration clause, that arbitration clause shall govern any disputes or claims between the Parties; if, however, any term of this Agreement to Arbitrate conflicts with the terms of any other document or agreement between the Parties, the terms of this Agreement to Arbitrate shall prevail. This Agreement to Arbitrate may not be modified or amended except by a separate written agreement signed by Purchaser(s) and an Authorized Dealership Representative.

---

18. **Entire Agreement and Signing Other Documents:** This Agreement and any documents which are part of this transaction or incorporated herein by reference comprise the entire agreement affecting this transaction. No other agreement or understanding of any nature has been made or will be recognized. You agree to sign any and all documents necessary to complete the terms of this transaction.

Page 3 of 3

Initial

82846*1*HOV-FI
CATALOG #6964281_B

© 2015 CDK Global, LLC  Texas (04/19)

# Application for Texas Title and/or Registration

DEAL# 3368
CUST# 13278

**Applying for (please check one):**
☐ Title & Registration  ☐ Title Only  ☐ Registration Purposes Only  ☐ Nontitle Registration

County: _____

**For a corrected title or registration, check reason:**
☐ Vehicle Description  ☐ Add/Remove Lien  ☐ Other: _____

Doc #: _____
☐ SPV  ☐ Appraisal Value $ _____

| 1. Vehicle Identification Number | 2. Year | 3. Make | 4. Body Style | 5. Model | 6. Major Color | 7. Minor Color |
|---|---|---|---|---|---|---|
| 3C6UR5DL4NG123805 | 22 | RAMT | PK | 2500 | | |

| 8. Texas License Plate No. | 9. Odometer Reading (no tenths) | 10. This is the Actual Mileage unless the mileage is: | 11. Empty Weight | 12. Carrying Capacity (if any) |
|---|---|---|---|---|
| N/A | 43054 | ☐ Not Actual  ☐ Exceeds Mechanical Limits  ☐ Exempt | | |

**13. Applicant Type**
☒ Individual  ☐ Business  ☐ Government  ☐ Trust  ☐ Non-Profit

**14. Applicant Photo ID Number or FEIN/EIN**
33857917

**15. ID Type**
☐ U.S. Driver License/ID Card (issued by: _____)  ☐ NATO ID  ☐ U.S. Dept. of State ID
☐ Passport (issued by: N/A)  ☐ U.S. Military ID  ☐ U.S. Dept. of Homeland Security ID
☐ U.S. Citizenship & Immigration Services/DOJ ID  ☐ Other Military Status of Forces Photo ID

| 16. Applicant First Name (or Entity Name) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| DOUGLAS | A | JOHNSON | |

| 17. Additional Applicant First Name (if applicable) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| 18. Applicant Mailing Address | City | State | Zip | 19. Applicant County of Residence |
|---|---|---|---|---|
| | S. | | | L |

| 20. Previous Owner Name (or Entity Name) | City | State | 21. Dealer GDN (if applicable) | 22. Unit No. (if applicable) |
|---|---|---|---|---|
| HOVEY MOTORCARS | BOERNE | TX | P150529 | |

| 23. Renewal Recipient First Name (or Entity Name) (if different) | Middle Name | Last Name | Suffix (if any) |
|---|---|---|---|
| | | | |

| 24. Renewal Notice Mailing Address (if different) | City | State | Zip |
|---|---|---|---|
| | | | |

| 25. Applicant Phone Number (optional) | 26. Email (optional) | 27. Registration Renewal eReminder | 28. Communication Impediment? |
|---|---|---|---|
| | | ☐ Yes (Provide Email in #26) | ☐ Yes (Attach Form VTR-216) |

| 29. Vehicle Location Address (if different) | City | State | Zip |
|---|---|---|---|
| | | | |

| 30. Multiple (Additional) Liens | 31. Electronic Title Request | 32. Certified/eTitle Lienholder ID Number (if any) | 33. First Lien Date (if any) |
|---|---|---|---|
| ☐ Yes (Attach Form VTR-267) | ☒ Yes (Cannot check #30) | 714227769702 | 03/25/2024 |

| 34. First Lienholder Name (if any) | Mailing Address | City | State | Zip |
|---|---|---|---|---|
| SSFCU | PO BOX 691510 | PO BOX 691510 | TX | 78269 |

**35. Check only if applicable:**

<b>MOTOR VEHICLE TAX STATEMENT</b>

☐ I hold Motor Vehicle Retailer (Rental) Permit No. _____ and will satisfy the minimum tax liability (V.A.T.S., Tax Code §152.046[c])
☐ I am a dealer or lessor and qualify for the Fair Market Value Deduction (V.A.T.S., Tax Code, §152.002[c]). GDN or Lessor Number _____

| 36. Trade-In (if any) | Year | Make | Vehicle Identification Number | 37. Additional Trade-In(s) |
|---|---|---|---|---|
| ☐ Yes (Complete) | N/A | N/A | N/A | ☐ Yes |

**38. Check only if applicable:**

<b>SALES AND USE TAX COMPUTATION</b>

| | | |
|---|---|---|
| ☒ (a) Sales Price ($ N/A rebate has been deducted) | $ 45995.00 | ☐ $90 New Resident Tax – (Previous State) _____ N/A |
| (b) Less Trade-In Amount, described in Box 36 above | $ (N/A) | ☐ $5 Even Trade Tax |
| (c) For Dealers/Lessors/Rental ONLY – Fair Market Value Deduction, described in Box 36 above | $ (N/A) | ☐ $10 Gift Tax – Attach Comptroller Form 14-317 |
| | | ☐ $65 Rebuilt Salvage Fee |
| (d) Taxable Amount (Item a minus Item b or Item c) | $ 45995.00 | ☐ 2.5% Emissions Fee (Diesel Vehicles 1996 and Older > 14,000 lbs.) N/A |
| (e) 6.25% Tax on Taxable Amount (Multiply Item d by .0625) | $ 2874.69 | ☐ 1% Emissions Fee (Diesel Vehicles 1997 and Newer > 14,000 lbs.) N/A |
| (f) Late Tax Payment Penalty ☐ 5% or ☐ 10% | $ N/A | ☐ Exemption claimed under the Motor Vehicle Sales and Use Tax Law because: |
| (g) Tax Paid to N/A (STATE) | $ N/A | |
| (h) AMOUNT OF TAX AND PENALTY DUE (Item e plus Item f minus Item g) | $ 2874.69 | ☒ $28 or $33 Application Fee for Texas Title (Contact your county tax assessor-collector for the correct fee.) |

**CERTIFICATION** – State law makes falsifying information a third degree felony

I hereby certify all statements in this document are true and correct to the best of my knowledge and belief, and I am eligible for title and/or registration (as applicable).
☐ (Check only if applicable) I certify I am applying for a corrected title and the original Texas Certificate of Title is lost or destroyed.



| | HOVEY MOTORCARS | 03/25/2024 |
|---|---|---|
| Signature(s) of Seller(s), Donor(s), or Trader(s) | Printed Name(s) (Same as Signature(s)) | Date |
| | DOUGLAS A JOHNSON | 03/25/2024 |
| Signature of Applicant/Owner | Printed Name (Same as Signature) | Date |
| | | 03/25/2024 |
| Signature(s) of Additional Applicant(s)/Owner(s) | Printed Name(s) (Same as Signature(s)) | Date |

Form 130-U Rev 02/22  96795*1*HOV-FI    Form available online at www.TxDMV.gov    03/25/2024  03:01 pm Page 1 of 2

**EXHIBIT H**

CTL1 10  CTL2 000  CTL3 000  CTL4 0000  ACCT ████████9020    JOHNSON DOUGL

| PRODUCT      ISRF | | PROCESS TYPE      03 | |
|---|---|---|---|
| ORIG LOAN AMT | 50,401.89 | ORIG LINE AMT | 0.00 |
| ORIG PROCEEDS | 50,401.89 | SL APPROV AMT | 0.00 |

CUSTOMER CTL1 10  CTL2 000  CTL3 000  CTL4 0000  NUMBER 00000520928225          ADDR NBR          000
DEALER   CTL1 10  CTL2 000  CTL3 000  CTL4 0000  DEALER 001164 LOC 1164 TYPE 0001
NUMBER OF ENDORSERS    0                 MAX LOAN RATE      0.0000000          FIRST DUE DATE    05/09/24

| APR | CONTRACT DATE | MATURITY DATE | 04/09/30 |
|---|---|---|---|
| INTEREST TYPE | DURATION CODE | LIABILITY TYPE | |
| TERM FREQUENCY | TERM INCRMENT | PRIM OFFICER | |
| PRIM BRANCH | ACCOUNT TYPE | ACCOUNT STATE | |
| ACCOUNT CNTRY | MAT DAT EXT? | SUB APPL ID | |
| CRDT RESCORE | CR BUR SCORE | PREAPPROVED | |
| SPEC HANDLE | DLR CB SCORE | REPO TYPE | |
| POOL GL | TIER EXCEPT | GL CODE | |
| APP # | USER AMT | RESCORE DT | |
| PLATE # | DISAB PMT | KO XOFF DT | |
| SBA GUAR % | USER PCT 2 | USER PCT 3 | |
| | | | |
| ALT OFFICER | REPORT OFFICER | COLLECT OFFICER | |
| SECURED CODE | COLLATERAL CD | OFFICER EMPL | |
| FDIC CODE | REG CODE | COMP CALL CODE | |
| UCLASS1 CODE | UCLASS2 CODE | SMSA | |
| CENSUS COUNTRY | CENSUS STATE | CENSUS COUNTY | |
| CENSUS TRACT | RPT BY CENSUS | MORTGAGE CODE | |
| MORTGAGE TYPE | PURCHASE IND | SOLD INDICATOR | |
| MAT BILL METHOD | MAT BILL TYPE | MAT LEAD DAYS | |
| MAT AUTO METHOD | MAT AUTO DAYS | CASH BASIS | |
| AUTO RECOVERY | PREPMT LIMIT | GOV INSURED CD | |
| REGION CODE | RPT TO CR BUR/SBFE | MESSAGE CODE | |
| BILL CHGOFF | CR BUR TYPE | BILL NONACCR | |
| PARTIAL PMT | AUTO PAYOFF | AUTO CLOSE | |
| PRINT PAYOFF | PMT MOD TYPE | PREBILL PMT | |
| POSTBILL PMT | SNGL BALLOON CD | MAT NTC TEXT TYPE | |
| COMM PAPER IND | PMT SCHED REV DT | EFP CODE | |
| LTV CATEGORY | LTV FORCE IND | RATE CHG NTC TP | |
| PMAT BILL METH | PMAT BILL TYPE | PMAT LEAD DAYS | |
| PMAT AUTO METH | PMAT AUTO DAYS | PMAT NTC TEXT TYPE | |
| PMAT PMT FREQ | PMAT PMT INCR | PMAT PMT DAY | |
| RISK RATING | SUBPRM IND | LEVG IND | |
| | | | |
| PD PCT | SCORE IND | | |

**EXHIBIT "I"**